Elizabeth G. KRISHNAN,
M.D., Petitioner,

v.

Humberto SEPULVEDA, Jr. and Olga
Sepulveda, Respondents.

No. D–3173.

Supreme Court of Texas.

Argued Oct. 12, 1993.

Decided June 15, 1995.

Gurwitz, Mr. Gary, Atlas & Hall, McAllen,
Leach, Mr. Rex N., Atlas & Hall, McAllen,
Powell, Ms. Lisa, Atlas & Hall, McAllen, for
petitioner.

Nagle, Mr. David J., David Nagle & Asso-
ciates, Austin, for respondents.

HIGHTOWER, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HECHT, GAMMAGE, ENOCH, SPECTOR and OWEN, Justices, join.

In this cause, we consider whether parents may recover damages from the birth of a stillborn fetus resulting from injury to the mother caused by the allegedly negligent diagnosis, prenatal supervision and treatment of the mother by her physician. Olga and Humberto Sepulveda sued Dr. Elizabeth G. Krishnan alleging that her negligence in providing diagnosis, prenatal supervision and treatment of Olga caused their child to be delivered stillborn. The trial court sustained Dr. Krishnan's special exception and dismissed the case. The court of appeals reversed and remanded. 839 S.W.2d 132. We affirm the judgment of the court of appeals.

In their original petition, the Sepulvedas alleged that Olga Sepulveda sought prenatal care and treatment, and delivery of her child from Dr. Krishnan. During the course of her pregnancy, while under Dr. Krishnan's care, Olga developed a condition known as preeclampsia, which generally manifests itself as elevated blood pressure and edema. The Sepulvedas alleged that Dr. Krishnan

> was negligent in that she failed to exercise the care of an ordinary prudent obstetrician by providing the necessary diagnosis, prenatal supervision, and prompt treatment of the Plaintiff's preeclampsia.
>
> 5. As a direct and proximate result of the Defendant's negligence, Plaintiffs' daughter, Patricia Sepulveda, died, and Plaintiffs have been caused to suffer severe mental pain, anguish, grief, and sorrow. Additionally, Plaintiffs have been caused to suffer the loss of society, companionship, and affection of their daughter, Patricia Sepulveda, deceased. Plaintiffs have also incurred expenses for funeral and burial for Patricia reasonably suitable to her station in life.

Dr. Krishnan specially excepted to, among other things, the Sepulvedas' allegation that they suffered mental anguish, loss of society, companionship, and affection from the death of their daughter because "such damages are not recognized under Texas law in the death of an unborn fetus as in this case." Subsequently, the trial court sustained Dr. Krishnan's special exception that the Sepulvedas' damages are not recognized under Texas law for the death of an unborn fetus and dismissed the case with prejudice.[1] The court of appeals reversed and remanded, concluding that the Sepulvedas' original petition alleged a common law cause of action for Olga's mental anguish suffered as a result of the loss of her fetus as a part of her own body, and that Olga's damages for loss of society and companionship are not recoverable in connection with the loss of the fetus. In addition, the court concluded the Sepulvedas' claim for funeral and burial expenses for the loss of the fetus should not have been dismissed because Dr. Krishnan did not specially except to the claim. Moreover, the court concluded that funeral expenses for the loss of a fetus are considered damages incurred by Olga as a direct result of her injury.

## I.

Dr. Krishnan argues that no cause of action exists for Olga's mental anguish suffered as a result of the loss of her fetus which was caused by Dr. Krishnan's alleged negligent diagnosis, prenatal supervision and treatment of Olga. We disagree.

■ "[T]here is no wrongful death or survival cause of action for the death of a fetus." *Pietila v. Crites*, 851 S.W.2d 185, 187 (Tex.1993); *Blackman v. Langford*, 795 S.W.2d 742, 743 (Tex.1990); *Tarrant County Hosp. Dist. v. Lobdell*, 726 S.W.2d 23, 23 (Tex.1987); *Witty v. American Gen. Capital Distrib., Inc.*, 727 S.W.2d 503, 506 (Tex.1987). *See* Tex.Civ.Prac. & Rem.Code §§ 71.002, 71.021. There is also no negligence cause of action arising out of the treatment or injury of a fetus. *Pietila*, 851 S.W.2d at 186–87. However, the Sepulvedas' cause of action is not precluded by *Pietila v. Crites*. The Sepulvedas alleged something entirely different as the basis for their claim—that Dr. Krish-

1. On the same date, the Sepulvedas attempted to file an amended petition, but the trial court denied their motion for leave to file their First Amended Petition.

nan was negligent *in caring for and treating Olga*, not the fetus. This is precisely the distinction in *Pietila:*

> [A]fter opportunity to amend, the Crites failed to allege there was negligent treatment of *Jill Crites* causing physical injury or mental anguish damages to her.... [*id.* at 186 n. 2] Because the Criteses did not claim that either physician improperly treated any of Jill's injuries, their claim fails as a matter of law.... Since the Criteses complain that their harm arose out of the doctors' negligent treatment of their unborn child, not of Jill, they are precluded from recovery as a matter of law....

*Id.* at 186–87. *See Wheeler v. Yettie Kersting Memorial Hosp.,* 866 S.W.2d 32, 44–45 (Tex.App.—Houston [1st Dist.] 1993, no writ) ("[T]he Wheelers stated a cause of action for emotional distress damages arising from the defendant's allegedly negligent treatment of Mrs. Wheeler."). Although the Sepulvedas' cause of action is not precluded by *Pietila*, this court has not addressed directly whether a mother may recover mental anguish damages suffered because of the loss of her fetus resulting from an injury to the mother which was caused by her physician's allegedly negligent treatment of the mother.

In *Western Union Tel. Co. v. Cooper,* 71 Tex. 507, 9 S.W. 598 (1888), we held that a woman could not recover mental anguish damages occasioned by the stillbirth of her child from a telegraph company whose employee failed to timely deliver a message to the woman's physician that she was in labor and needed his assistance. We stated:

> We do not think the death of a child before birth, and the grief or sorrow occasioned thereby, can be an element of damages in this character of suit. If it is made to appear from testimony that Mrs. Cooper suffered more physical pain, mental anxiety, and alarm, on account of her own condition, than she would have done if Dr. Keating had been in attendance upon her, and the failure to secure his services is shown to be due to the want of proper care on the part of the defendant's servant, whose duty it was to deliver the message, a fair and reasonable compensation should be allowed for such increased pain and mental suffering; but the death of the child, the bereavement of the parents, and their grief for its loss cannot be considered as an element of damages. Such damages are too remote; they are the result of a *secondary cause*, and ought not to be allowed to enter into a verdict. This is not an action under the statute by the parents for the death of a child, and if it were, injury to the feelings of the parents could not be a basis of recovery by them.

*Cooper,* 9 S.W. at 599–600 (emphasis added). The facts of this case are substantially different from the facts in *Cooper. Cooper* specifically noted that damages for the mental anguish caused by the stillbirth were too remote when it appeared that the stillbirth resulted from a "secondary cause"—the failure of a telegraph company to timely deliver a message to the woman's physician that she was in labor and needed his assistance. Here, the stillbirth resulted directly from Dr. Krishnan's allegedly negligent diagnosis, prenatal supervision and negligent treatment of Olga. Accordingly, we conclude that *Cooper* is distinguishable. However, to the extent that *Cooper* is not distinguishable and conflicts with this opinion, we overrule it.

## II.

The overwhelming majority of states now permit some form of recovery for the loss of a fetus. For example, approximately ten states and the District of Columbia recognize a common law cause of action for mental anguish suffered as a result of the loss of a fetus.[2] In addition, approximately thirty-six

---

**2.** *See Modaber v. Kelley,* 232 Va. 60, 348 S.E.2d 233, 237 (1986); *Giardina v. Bennett,* 111 N.J. 412, 545 A.2d 139, 140–42 (1988); *Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.,* 327 N.C. 283, 395 S.E.2d 85, 98–99 (1990); *Hilsman v. Winn Dixie Stores, Inc.,* 639 So.2d 115, 117 (Fla.App.1994); *McGeehan v. Parke–Davis,* 573 So.2d 376, 377 (Fla.App.1991); *Prado v. Catholic Medical Center of Brooklyn and Queens, Inc.,* 145 A.D.2d 614, 536 N.Y.S.2d 474, 475 (App.Div.1988); *District of Columbia v. McNeill,* 613 A.2d 940, 942–44 (D.C.1992); *Seef v. Sutkus,* 205 Ill.App.3d 312, 150 Ill.Dec. 76, 562 N.E.2d 606, 608–09 (Ill.App.1990); *Milton v. Cary Medical Center,* 538 A.2d 252, 256 (Me.1988); *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085, 1088–89

states and the District of Columbia[3] recognize a wrongful death cause of action for the loss of a viable fetus.[4] Most of these states characterize a viable fetus as a "person" or "minor child" under their wrongful death statutes. However, this court declines to overrule its prior opinions and continues to hold that "there is no wrongful death or survival cause of action for the death of a fetus." See *Pietila v. Crites*, 851 S.W.2d at 187; *Blackman v. Langford*, 795 S.W.2d at 743; *Tarrant County Hosp. Dist. v. Lobdell*, 726 S.W.2d at 23; *Witty v. American Gen. Capital Distrib., Inc.*, 727 S.W.2d at 506. Furthermore, the Legislature has not amended the wrongful death and survival statutes to create a wrongful death or survival cause of action for loss of a fetus. See Tex.Civ.Prac. & Rem.Code §§ 71.002, 71.021. Such Legislative inaction suggests approval of our holdings that "there is no wrongful

death or survival cause of action for the death of a fetus." See *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863, 866 (Tex.1975).

On the other hand, Texas has authorized recovery of mental anguish damages in virtually all personal injury actions. See, e.g., *Coates v. Whittington*, 758 S.W.2d 749 (Tex. 1988); *Harris County Hosp. Dist. v. Estrada*, 872 S.W.2d 759 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Baylor Medical Plaza Services Corp. v. Kidd*, 834 S.W.2d 69 (Tex.App.—Texarkana 1992, writ denied); *Hammond v. Estate of Rimmer*, 643 S.W.2d 222 (Tex.App.—Eastland 1982, writ ref'd n.r.e.); *Dupree v. Blackmon*, 481 S.W.2d 216 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Hicks v. Ricardo*, 834 S.W.2d 587 (Tex.App.—Houston [1st Dist.] 1992, no writ); *McAllen Coca Cola Bottling Co., Inc.*

(1985); *Vaillancourt v. Medical Center Hosp. of Vermont*, 139 Vt. 138, 425 A.2d 92, 95 (1980); *Johnson v. Superior Court of Los Angeles Cty.*, 177 Cal.Rptr. 63, 65 (Cal.App.1981). *But see Henderson v. North*, 545 So.2d 486, 488 (Fla.App. 1989) (the allegation "was a thinly disguised claim for the wrongful death of the fetus and the plaintiffs' mental pain and suffering associated therewith....").

3. Illinois, North Carolina, Pennsylvania, Vermont and the District of Columbia recognize a common law cause of action for mental anguish suffered as a result of the death of a fetus and a wrongful death cause of action for the death of a viable fetus. However, several states that recognize a common law cause of action for mental anguish suffered as a result of the death of a fetus do not recognize a wrongful death cause of action for the death of a viable fetus.

4. *See Eich v. Town of Gulf Shores*, 293 Ala. 95, 300 So.2d 354, 358 (1974); *Summerfield v. Superior Court of Maricopa Cty.*, 144 Ariz. 467, 698 P.2d 712, 724 (1985); *Hatala v. Markiewicz*, 26 Conn.Supp. 358, 224 A.2d 406, 407–08 (1966); *Worgan v. Greggo & Ferrara, Inc.*, 128 A.2d 557, 558 (Del.Super.Ct.1956); *Greater Southeast Community Hosp. v. Williams*, 482 A.2d 394, 397–98 (D.C.1984); *Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100, 103 (1955); *Wade v. U.S.*, 745 F.Supp. 1573, 1579 (D.Hawaii 1990); *Volk v. Baldazo*, 103 Idaho 570, 651 P.2d 11, 15 (Idaho 1982); *Chrisafogeorgis v. Brandenberg*, 55 Ill.2d 368, 304 N.E.2d 88, 91–92 (1973); *Britt v. Sears*, 150 Ind.App. 487, 277 N.E.2d 20, 26–27 (1971); *Dunn v. Rose Way, Inc.*, 333 N.W.2d 830, 833–34 (Iowa 1983); *Hale v. Manion*, 189 Kan. 143, 368 P.2d 1, 3 (1962); *Mitchell v. Couch*, 285 S.W.2d

901, 906 (Ky.1955); *Danos v. St. Pierre*, 402 So.2d 633, 639 (La.1981); *State ex rel. Odham v. Sherman*, 234 Md. 179, 198 A.2d 71, 73 (1964); *Mone v. Greyhound Lines, Inc.*, 368 Mass. 354, 331 N.E.2d 916, 920 (1975); *O'Neill v. Morse*, 385 Mich. 130, 188 N.W.2d 785, 786 (1971); *Verkennes v. Corniea*, 229 Minn. 365, 38 N.W.2d 838, 841 (1949); *Rainey v. Horn*, 221 Miss. 269, 72 So.2d 434, 439–40 (1954); *O'Grady v. Brown*, 654 S.W.2d 904, 911 (Mo.1983); *White v. Yup*, 85 Nev. 527, 458 P.2d 617, 623–24 (1969); *Poliquin v. MacDonald*, 101 N.H. 104, 135 A.2d 249, 251 (1957); *DiDonato v. Wortman*, 320 N.C. 423, 358 S.E.2d 489, 495 (1987); *Salazar v. St. Vincent Hosp.*, 95 N.M. 150, 619 P.2d 826, 830 (App.1980); *Hopkins v. McBane*, 359 N.W.2d 862, 865 (N.D.1984); *Werling v. Sandy*, 17 Ohio St.3d 45, 476 N.E.2d 1053, 1056 (1985); *Evans v. Olson*, 550 P.2d 924, 927–28 (Okla.1976); *Libbee v. Permanente Clinic*, 268 Or. 258, 518 P.2d 636, 630–40 (1974); *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085, 1089 (1985); *Presley v. Newport Hosp.*, 117 R.I. 177, 365 A.2d 748, 754 (1976); *Cert. of Question of Law from U.S. Dist. Ct.*, 387 N.W.2d 42, 45 (S.D.1986); S.D.Codified Laws § 21–5–1 (1987); *Fowler v. Woodward*, 244 S.C. 608, 138 S.E.2d 42, 45 (1964); Tenn.Code § 20–5–106 (1994); *Vaillancourt v. Medical Center Hosp. of Vermont*, 139 Vt. 138, 425 A.2d 92, 95 (1980); *Moen v. Hanson*, 85 Wash.2d 597, 537 P.2d 266, 268 (1975); *Baldwin v. Butcher*, 155 W.Va. 431, 184 S.E.2d 428, 436 (1971); *Kwaterski v. State Farm Mut. Auto. Ins. Co.*, 34 Wis.2d 14, 148 N.W.2d 107, 112 (1967). *But see Justus v. Atchison*, 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122, 132–33 (1977); *Kuhnke v. Fisher*, 210 Mont. 114, 683 P.2d 916, 919 (1984); *Egbert v. Wenzl*, 199 Neb. 573, 260 N.W.2d 480, 482 (1977).

*v. Alvarez,* 581 S.W.2d 201 (Tex.Civ.App.—Corpus Christi 1979, no writ). We see no rational basis for excluding recovery of mental anguish damages in personal injury actions which have as one element the loss of a fetus. Consequently, we hold that Olga may recover mental anguish damages suffered as a result of her injury which was proximately caused by Dr. Krishnan's allegedly negligent diagnosis, prenatal supervision and treatment of Olga and which includes the loss of her fetus.

### III.

We now consider whether Humberto may recover mental anguish damages suffered as a result of Olga's injury which was proximately caused by Dr. Krishnan's allegedly negligent diagnosis, prenatal supervision and treatment of Olga including the loss of the fetus.

 As we recognized in *Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993), there are certain relationships which "give rise to a duty which, if breached, would support an emotional distress award" even absent proof of physical injury. *Id.* at 600. The physician/patient relationship is one such relationship. Dr. Krishnan had a clear, legal duty to provide competent medical care to Olga. A breach of this duty, coupled with the mental anguish resulting from the loss of an unborn child, could provide a sufficient basis for Olga's recovery. No such duty, which arises out of the physician/patient relationship, was owed by Dr. Krishnan to Humberto. *See Bird v. W.C.W.,* 868 S.W.2d 767, 769–70 (Tex. 1994). Consequently, we hold that Humberto may not recover mental anguish damages he suffered as a result of Olga's injury which was proximately caused by Dr. Krishnan's allegedly negligent diagnosis, prenatal supervision and treatment of Olga including the loss of the fetus.[5]

5. However, Humberto has a separate and independent cause of action for loss of consortium as a result of an injury to Olga. *See Whittlesey v. Miller,* 572 S.W.2d 665, 668 (Tex.1978) ("[W]e

### IV.

We next consider whether the Sepulvedas may recover damages for their loss of society, companionship, and affection suffered as a result of the loss of the fetus which was proximately caused by Dr. Krishnan's allegedly negligent diagnosis, prenatal supervision and treatment of Olga.

 In *Sanchez v. Schindler,* 651 S.W.2d 249, 254 (Tex.1983), this court determined that under the wrongful death statute, a parent may recover damages for the loss of companionship and society resulting from the death of a child. However, no wrongful death or survival cause of action exists for the loss of a fetus. *Pietila v. Crites,* 851 S.W.2d at 187; *Blackman v. Langford,* 795 S.W.2d at 743.

In *Reagan v. Vaughn,* 804 S.W.2d 463, 467 (Tex.1990), this court determined that a child "may recover for loss of consortium when a third party causes serious, permanent, and disabling injuries to their parent." Loss of parental consortium damages would include loss of affection, companionship and society. *Id.* However, a "cause of action for loss of [parental] consortium is derivative of the parent's claim for personal injuries ... [and] any defense that tends to constrict or exclude the defendant's liability to the injured parent will have the same effect on the child's consortium action." *Id.* Assuming that a cause of action exists for loss of a child's consortium which is derivative of the child's claim for personal injuries, the Sepulvedas are precluded from recovering damages for their loss of society, companionship, and affection suffered as a result of the loss of the fetus because there is no negligence cause of action arising out of the treatment or injury of a fetus. *Pietila,* 851 S.W.2d at 186–87. Consequently, the Sepulvedas may not recover damages for their loss of society, companionship, and affection suffered as a result of the loss of the fetus.

hold that either spouse has a cause of action for loss of consortium that might arise as a result of an injury caused to the other spouse by a third

We affirm the judgment of the court of appeals.[6]

GONZALEZ and CORNYN, JJ., dissent.

GONZALEZ, Justice, dissenting.

Humberto and Olga Sepulveda, a married couple, brought suit for the mental anguish they suffered over the death of Patricia, their unborn child, which they claim was caused by a doctor's negligence. By giving the Sepulvedas' pleadings a strained reading, the Court today sidesteps precedent and grants the mother a cause of action for the wrongful death of a baby. The Court thereby calls into question the series of cases in which we declined to recognize a wrongful death action for the death of an unborn child, *Pietila v. Crites*, 851 S.W.2d 185, 187 (Tex.1993) (per curiam), *Blackman v. Langford*, 795 S.W.2d 742, 743 (Tex.1990) (per curiam), *Witty v. American Gen. Capital Distrib., Inc.*, 727 S.W.2d 503, 506 (Tex.1987), and *Tarrant County Hosp. Dist. v. Lobdell*, 726 S.W.2d 23, 23 (Tex.1987) (per curiam). It further adds to the confusion about jury instructions for mental anguish. Finally, by holding that the mother but not the father may bring such a claim, the Court perpetuates the myth that only a woman grieves and suffers the mental anguish caused by the loss of a baby in the womb. By its ruling today, the Court creates a new rule that unconstitutionally discriminates between the sexes as to who can recover mental anguish damages for the child's death without a compelling state interest to justify the distinction.[1] I dissent.

I would recognize that the reasons for disallowing such a cause of action, as set forth in a line of cases beginning in the last century, are no longer valid in light of developments in the common law and in medical technology. I would further recognize that when a pregnant woman establishes a doctor/patient relationship with a physician for the prenatal care and delivery of a baby, the doctor owes a duty of care to the baby, the mother, and the father. It is time to bring our state in line with modern jurisprudence. I would squarely recognize that both parents have a cause of action for the anguish they suffer when an unborn child dies due to another's negligence.

## I

The Sepulvedas brought suit against Dr. Elizabeth G. Krishnan alleging that the doctor's negligence in providing prenatal care caused Patricia, the Sepulvedas' unborn child, to be delivered stillborn. The Sepulvedas stated that Dr. Krishnan was negligent in providing prenatal care to Mrs. Sepulveda and that her negligence caused Patricia's death. Both of the plaintiffs sought identical damages for mental anguish, loss of the society and companionship of their daughter, and funeral and burial expenses. As shown by plaintiffs' original petition, attached in full as an appendix to this opinion, the plaintiffs *did not allege that Mrs. Sepulveda was physically injured.* The plaintiffs seek to recover mental anguish damages solely as the result of their daughter's alleged wrongful death.

Dr. Krishnan filed special exceptions, a general denial, and a motion for summary judgment. In her supporting affidavit, the doctor stated that she was board certified in obstetrics and gynecology and that she had been practicing medicine in these areas for fourteen years. Dr. Krishnan asserted that there were no signs of fetal distress during Mrs. Sepulveda's pregnancy or prior to the delivery, and concluded that the baby's death "was caused by a tight loop of cord around the body, left arm and head." The plaintiffs

---

party tortfeasor's negligence."); *McGovern v. Williams*, 741 S.W.2d 373, 374 (Tex.1987).

**6.** Since Dr. Krishnan does not complain of the court of appeals' reinstatement of the Sepulvedas' claim for funeral and burial expenses which were not challenged by Dr. Krishnan's special exception, we express no opinion on that issue. Additionally, since we have determined that the cause should be remanded to the trial court, the issue of the trial court's abuse of discretion in denying the Sepulvedas leave to file their First Amended Petition is moot. *See Tower Contract-*

*ing Co. v. Flores*, 157 Tex. 297, 302 S.W.2d 396, 400 (1957). The Sepulvedas may amend their pleadings within a reasonable time before trial.

**1.** Article I, section 3a of the Texas Constitution mandates, "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." Our jurisprudence recognizes gender as a suspect classification in this state. *In re McLean*, 725 S.W.2d 696, 698 (Tex.1987).

countered with an affidavit from Dr. Angeline Williams of San Antonio, a board certified physician in obstetrics and gynecology. Dr. Williams reviewed the patient records and concluded that Dr. Krishnan was negligent. She opined "that had Dr. Krishnan promptly instituted action to deliver the baby at the time that the decrease in amniotic fluid volume was noted, there would have been a live baby born to Mrs. Sepulveda."

The trial court sustained the special exceptions and dismissed the case with prejudice on the ground that Texas law does not recognize a cause of action for emotional injuries due to the death of an unborn child. Inexplicably, the court of appeals re-pleaded the cause of action for the plaintiffs. It read into the plaintiffs' original petition an *allegation of physical injury to Mrs. Sepulveda's body.* 839 S.W.2d 132, 136. The court of appeals then held that the Sepulvedas had pleaded a proper cause of action, reversed the trial court's judgment, and remanded for trial. Upon appeal to this Court, Dr. Krishnan seeks review of the judgment of the court of appeals.

The Court today repeats the court of appeals's error of construing the Sepulvedas' petition to allege a cause of action they in fact did not plead. *See* 916 S.W.2d 478, 479. Although the plaintiffs ostensibly brought a negligence action, their case is but a thinly-disguised claim for mental anguish damages due to the wrongful death of an unborn child. Artful pleading alone, whether by a party or this Court, should not be used to circumvent our precedent, which prohibits parents from recovering mental anguish damages due to the death of an unborn child. Rather, the Court should reexamine its rationale for denying the existence of such a cause of action,

and, as I believe is necessary, overrule precedent if the reasons for it are no longer valid.

## II

One can debate the meaning and purpose of life, and what life is worth protecting, but under contemporary scientific standards it is beyond dispute that human life begins at conception.[2] Because of continuing technological developments over the last several decades, such as real time ultrasound imaging, and the development of fetology, a new field in medical science, the issue of when human life begins is no longer debatable. *See* DANFORTH'S OBSTETRICS AND GYNECOLOGY xi (6th ed. 1990). In 1965, Life Magazine published a photo-essay with dramatic, unprecedented color photographs of a living embryo inside the mother's womb. The photo-essay traces the development of fetal life. At three and a half weeks from conception, the embryo is about a tenth of an inch long, with the beginnings of eyes, spinal cord, nervous system, thyroid gland, lungs, stomach, liver, kidney and intestines. The baby's heart, which began to beat haltingly on the eighteenth day of life, is now pumping more confidently. At four weeks, the baby's heart, in proportion to its body, is nine times larger than an adult's. At five weeks, the embryo grows to about a third of an inch long. At six and a half weeks from conception, the baby's eyes are open but the fingers and toes are still webbed. Though the embryo now weighs only 1/30th of an ounce, it has all the internal organs of an adult, in various stages of development. The baby has a little mouth with lips, an early tongue, buds for milk teeth, and the beginnings of sex and reproductive organs. At eleven weeks, the baby reaches two and a half inches in length. It inhales and exhales out of its lungs. Bones, including the ribs, are formed, and the moth-

---

2. Excerpts from medical textbooks illustrate the present scientific view that a baby's life begins at the moment of conception:

Zygote. This cell results from fertilization of a oocyte by a sperm and is the beginning of human being....
Development begins at fertilization, when a sperm unites with an oocyte to form a *zygote* (from the Greek *zygotos* meaning "yoked together"). Each of us started life as a cell called a zygote.

MOORE, THE DEVELOPING HUMAN 1, 12 (2d ed. 1977). In the first paring, the spermatozoon has contributed its 23 chromosomes, and the oocyte has contributed its 23 chromosomes, thus re-establishing the necessary total of 46 chromosomes. The result is the conception of a unique individual, unlike any that has been born before and unlike any that will ever be born again.

KRIEGER, THE HUMAN REPRODUCTIVE SYSTEM 88 (1969).

er begins to feel the sharp kick and thrust of the baby's foot, knee and elbow. At sixteen weeks, the unborn baby's body is three to five and a half inches long and recognizable as a human baby. At eighteen weeks, the baby sucks its thumb. After spending approximately nine months in the mother's womb, the baby is born. *See* Nilson, *Drama of Life Before Birth*, LIFE, April 30, 1965, at 30, *reprinted in* LIFE EDUCATIONAL REPRINT 27 (1980). Because of the advances in medical science, we now know that a fetus feels pain. Valman & Pearson, *The First Year of Life: What the Fetus Feels*, 280 BRITISH MED.J. 233, 234 (Jan. 26, 1980). What was unthinkable just a few years ago, surgery on a child in utero, is now a reality. *See* Kolata, *Major Operation on Fetus Works for First Time*, N.Y. TIMES, May 31, 1990, at A1; Vargo, *Seton Doctors Give Baby Life as Rare Procedure Saves Fetus*, AUSTIN AM. STATESMAN —— (1995); *Fetal Operation Touted*, DALLAS MORNING NEWS 4A (Feb. 17, 1994).

As a result of these advances, it is clear "we have entered an era in which the fetus can be rightfully considered and treated as our second patient." PRITCHARD, ET AL., WILLIAMS OBSTETRICS vii (16th ed. 1990); *see* HARRISON ET AL., THE UNBORN PATIENT xi (1984). I would not hesitate to recognize that a obstetrician's relationship extends to the second patient, the unborn child. As this Court has repeated, "The common law is not frozen or stagnant, but evolving, and it is the duty of this court to recognize the evolution." *Reagan v. Vaughn*, 804 S.W.2d 463, 465 (Tex. 1990) (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 309–10 (Tex.1987)). This relationship gives rise to a duty to provide competent medical care to the baby. Breach of the duty of care would subject the physician to liability, including for the parents' mental anguish and loss of society and companionship arising from the baby's wrongful death. *See Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex.1993); *Reagan*, 804 S.W.2d at 465–67. The principle recognized in *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex.1983), that the wrongful death statute allows parents to recover damages resulting from the wrongful death of a living child, cannot sensibly apply only to the deaths of children whose lives ended after they have left the mother's womb.

## III

Early Texas jurisprudence did not recognize a cause of action for injuries resulting in the death of an unborn child. *See Western Union Tel. Co. v. Cooper*, 71 Tex. 507, 9 S.W. 598 (1888). In *Cooper*, plaintiff parents sued Western Union for failing to deliver a message from the father to a doctor, which asked him to come to the couple's home to assist his wife in childbirth. Unattended by any physician, the mother gave birth to a stillborn child. The parents alleged that they suffered mental anguish as a result of Western Union's failure to timely deliver the message to their doctor. Although the trial court rendered judgment for the parents, this Court reversed and remanded, stating:

> We do not think the death of the child before birth, and the grief or sorrow occasioned thereby, can be an element of damages in this character of suit.... [T]he death of the child, the bereavement of the parents, and their grief for its loss cannot be considered as an element of damages. Such damages are too remote.

9 S.W. at 599. This Court added that the action was not one for the death of a child, but "if it were, injury to the feelings of the parents could not be the basis of a recovery by them." *Id.* at 600. We have reiterated this holding on numerous occasions. *See, e.g., Pietila*, 851 S.W.2d at 187; *Blackman*, 795 S.W.2d at 743; *Witty*, 727 S.W.2d at 506; *Tarrant County Hosp.*, 726 S.W.2d at 23.

In *Witty*, a pregnant woman sustained an on-the-job injury. A sonogram done shortly after the accident revealed that the baby was alive, but a second sonogram six days later revealed that the baby had died. *Witty v. American Gen. Capital Distrib., Inc.*, 697 S.W.2d 636, 644 (Tex.App.—Houston [1st Dist.] 1985) (Dunn, J., concurring). Surgeons removed the baby from the mother's uterus nine days after the accident. *Id.* at 638. The mother sued her employer for negligence, alleging damages for mental anguish caused by the death of the unborn baby, and alternatively alleging property damage as a result of the destruction of her

chattel, the unborn baby. *Id.* The trial court held that Witty's claims were barred as a matter of law; it granted summary judgment in favor of the defendant. *Id.* The court of appeals reversed and remanded, holding that the woman could maintain her wrongful death action. This Court reversed, and held that she could not recover for the baby's death under the wrongful death or survivor statutes. *Witty,* 727 S.W.2d at 506. (Justice Kilgarlin dissented from this holding, *id.* at 506, and as I discuss below, I have come to believe his was position was correct.)

In *Tarrant County Hosp.,* the parents brought a medical malpractice action against the hospital and the doctors involved in the delivery of their child, alleging that their negligence caused the intrauterine death of the baby. Although the court of appeals held that the parents had a right of recovery under the Texas Wrongful Death Act "for negligent conduct proximately causing the intrauterine death of a viable fetus," *Lobdell v. Tarrant County Hosp. Dist.,* 710 S.W.2d 811, 812 (Tex.App.—Ft. Worth 1986), this Court reversed. *Tarrant County Hosp. Dist.,* 726 S.W.2d at 23. We again held that the parents could not maintain a cause of action for the death of an unborn baby under the wrongful death statute. *Id.*

In *Blackman,* a woman nine months pregnant was involved in a car accident. Because no fetal heartbeat was detected, her baby was delivered by emergency caesarean, but the baby was stillborn. The parents brought a wrongful death action against the driver of the other car involved in the accident. This Court affirmed summary judgment for the defendant driver, holding that there is no cause of action for the death of an unborn child under the wrongful death statutes. *Blackman,* 795 S.W.2d at 743.

In *Pietila,* a woman who was eight months pregnant was injured in an automobile accident. At the hospital emergency room, she told a nurse that her unborn baby was not moving. The nurse contacted the woman's obstetrician, Dr. Richard Pietila. After determining there was a fetal heartbeat and movement, upon Dr. Pietila's recommendation, the hospital's physician released the woman. When she visited Dr. Pietila's office

the next morning, however, a sonogram revealed that she had lost the baby. It was later delivered stillborn. *Pietila,* 851 S.W.2d at 186.

The woman and her husband sued Dr. Pietila and emergency room physician, seeking damages for their mental anguish suffered as a result of the doctors' alleged negligent treatment of their unborn child. Specifically, the parents alleged that:

> Each Defendant violated the duty owed to [the parents] to exercise the ordinary care and diligence exercised by other physicians in the same or similar circumstances, and each Defendant was negligent in the following particulars:
>
> (a) In failing to use reasonable skill, care, and diligence to correctly diagnose the injury and trauma to the . . . child;
>
> (b) In failing to treat the injury to the . . . child;
>
> (c) In failing to diagnose the condition of the child without making proper tests;
>
> (d) In failing to follow generally accepted standards in the community for the treatment of a fetus who has received injury from an accident;
>
> Each and every one of the foregoing acts and omissions, taken separately and collectively, constitute a direct and proximate cause of the death of the Plaintiffs' child. Each and every of the foregoing acts and omissions, taken separately and collectively, constitute a direct and proximate cause of injury to the Plaintiffs in the form of past and future mental anguish.

*Crites v. Pietila,* 826 S.W.2d 175, 178 n. 2 (Tex.App.—El Paso 1992). The trial court granted summary judgment to the doctors. A divided court of appeals reversed and remanded. *Id.* at 176. In a per curiam opinion, this Court reversed the judgment of the court of appeals and affirmed the judgment of the trial court. We held that because the parents asserted that "their harm arose out of the doctors' negligent treatment of their unborn child," rather than of the mother, the parents were "precluded from recovery as a matter of law because there is no wrongful death action for the death of a fetus." *Pietila,* 851 S.W.2d at 187.

Clearly, this Court has long held that there is no wrongful death cause of action available to the parents of an unborn child. The Court errs in stating that "the Sepulvedas' cause of action is not precluded by *Pietila,*" and that "this court has not addressed directly whether a mother may recover mental anguish damages suffered because of the loss of her fetus resulting from an injury to the mother ... caused by her physician's allegedly negligent treatment of the mother." 916 S.W.2d at 480. In other words, the Court's stance today is that we have never addressed if a mother can recover mental anguish damages for the wrongful death of a fetus due to a physician's negligence. However, this is obviously not an unaddressed question, given *Pietila,* 851 S.W.2d at 187, *Blackman,* 795 S.W.2d at 743, *Tarrant County Hosp. Dist.,* 726 S.W.2d at 23, *Witty,* 727 S.W.2d at 506, and *Cooper,* 9 S.W. at 599–600. In an impassioned dissent in *Witty,* Justice Kilgarlin in fact castigated this Court for its repeated refusal to recognize an independent common law cause of action for the death of a child in the womb. He wrote:

> I unhesitatingly dissent, although I wish—no, fervently yearn—that it were not necessary; for with its opinion, the court has unbelievably resurrected the old common law maxim that it is more profitable for the defendant to kill than to injure. A dead fetus is now worth nothing, but one injured and later born alive may sue.... [W]e consign ourselves to the dark ages of tort law and will again merit the dubious distinction of being one of the last states, if ever, to accept a cause of action already recognized in thirty-six jurisdictions: a wrongful death action for the death of a fetus at the hands of a negligent tortfeasor.
>
> ....

[The court fails] to point to any evidence that the legislature demonstrated an intent that the words "individual" or "person" do *not* include a fetus. Yet, the court, without any reasoning, discussion or analysis, proclaims its holding that the legislature did not intend an unborn fetus to be an "individual" or "person." A proper reading of Texas precedent ... leads me to the inescapable conclusion that the parents of a stillborn fetus have a cause of action for its wrongful death.

727 S.W.2d at 506–07 (Kilgarlin, J., dissenting) (emphasis added). Justice Kilgarlin would not have written as he did if the sole effect of *Witty* and the other cases was to preclude only those causes of action not artfully plead. His fervor stemmed from the Court's denial in *Witty* of a remedy for couples in situations like that of the Sepulvedas'. The Court's effort to re-plead Mrs. Sepulveda's claim so that she can recover some mental anguish damages does not remedy the flaw that Justice Kilgarlin identified in our jurisprudence.

In the case before us, the plaintiffs seek to be compensated for their emotional harm from the loss of the child they expected to have.[3] Their claim is equivalent to the parents' claims in the foregoing cases that we have held not actionable. In retrospect, I now believe that Justice Kilgarlin was right. The cause of action for the wrongful death of an unborn child should exist. The Court in reality recognizes as much, by allowing Mrs. Sepulveda to recover for the death of her unborn daughter. However, it does so by concocting the fiction that the injuries the Sepulvedas allege have to do with a physical injury to Mrs. Sepulveda's body. We instead ought to be intellectually honest and expressly authorize a wrongful death action

---

3. In *St. Elizabeth Hospital v. Garrard,* this Court disposed of the long-established requirement that a plaintiff claiming mental anguish damages must establish a physical manifestation of injury before recovering for that anguish. 730 S.W.2d 649, 654 (Tex.1987), *overruled on other grounds, Boyles v. Kerr,* 855 S.W.2d at 597. Before *Garrard,* a plaintiff could not recover mental anguish damages absent some physical manifestation, unless the mental anguish was the product of a willful tort or the defendant's wanton or reckless

behavior. *See Harned v. E–Z Finance Co.,* 254 S.W.2d 81, 82 (Tex.1953) (disallowing recovery for emotional distress unless the plaintiff showed physical injury). *But see Moore v. Lillebo,* 722 S.W.2d 683, 685–86 (Tex.1986) (abandoning the "physical manifestation" requirement in wrongful death actions). The new rule announced in *Garrard* permits a jury to award mental anguish damages even if the plaintiff offers nothing but subjective testimony of mental distress. *Garrard,* 730 S.W.2d at 654.

for an unborn child's death. The precedent to the contrary should be squarely overruled.

If a physician negligently injures a mother, she has a remedy and a cause of action. But the Sepulvedas allege no such injuries here. Under our existing precedents, however, if a physician negligently treats a baby while it is in the womb, the child's mother and father cannot recover mental anguish damages caused by its death due to the physician's negligence. The Court's effort to avoid overruling precedent and yet allow Mrs. Sepulveda a cause of action gives rise to a conundrum.

What will the jury charge for this kind of case read in the future? Since this Court leaves *Pietila, Blackman, Witty,* and *Tarrant County Hosp. Dist.* on the books, of necessity a trial court will have to instruct the jury not to award damages to the mother "by way of consolation for the death" of the unborn baby or for "any sorrow, anguish, or grief suffered as a result" of the baby's death. *See* TEX.PATTERN J.CHARGES § 81.04 (1982). This instruction was made obsolete in the context of parents' wrongful death actions for the death of a child following its birth, *see id.* cmt. (Supp.1984) (citing *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983)), but it must be resurrected again to respond to the Court's writing today. Moreover, in light of today's opinion holding that a mother is not entitled to recover damages for the loss of society, companionship, and affection due to the unborn child's death, 916 S.W.2d at 482, a careful trial judge may well add the following instruction:

> Do not include any pecuniary loss resulting from the death of [the baby]. Do not consider the love, comfort, companionship, and society that [the mother] would have received from [the baby]. Disregard any mental anguish suffered by [the mother] in the past or which will be suffered in the

future resulting from the death of [the baby].

*See id.* § 83.03A (Supp.1984) (stating the elements of recovery that the surviving parents of a minor child are entitled to in a wrongful death action). Although this instruction will be generally troublesome, the mental anguish component will probably be the most problematic.

This Court holds that the injury resulting in the death of an unborn child due to a physician's negligent prenatal care is a personal injury to the mother. Presumably, therefore, a trial judge will ask the general question for personal injury damages recoverable for a physician's negligence.[4] The definition of mental anguish will also appear in the charge. The definition could state:

> Mental anguish means an emotional pain, torment, and suffering experienced by [the mother] as a result of the occurrence in question.

Alternatively, it could state:

> Mental anguish is a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*See Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ). This Court today rules that the "loss of the fetus" is a recoverable injury to the mother, 916 S.W.2d at 482, but that the death of the baby itself is not. Therefore, a trial judge probably should also add an exclusionary instruction, to wit: "Do not include any amount for mental anguish not resulting from the injury to the mother, if any, that resulted from the occurrence in question."

---

4. The question will state in part:

Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate [the mother] for [her] injuries, if any, resulting from the occurrence in question.

You are to consider each element of damage separately, so as not to include damages for one element in any other element.

. . . .

(a) Physical pain and mental anguish in the past.

Answer: _____

(b) Physical pain and mental anguish that, in reasonable probability, [the mother] will suffer in the future.

Answer: _____

TEX. PATTERN J. CHARGES § 80.04 (1982).

As this Court recently recognized, Texas courts already struggle "to distinguish between the disturbing events that justify mental anguish damages and those that do not." *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 443 (Tex.1995). It will not be surprising if the foregoing instructions and definitions profoundly confuses juries, attorneys, and trial and appellate courts.

First, as *Parkway* concedes, the jurisprudence on what is and is not "mental anguish" presently baffles trial courts and juries. *Id.* at 443. Second, the concepts of loss that the Court speaks of as two separate injuries, one of which is recoverable and the other not, are in fact inextricably intertwined. For these reasons, the Court is asking the trier of fact to do the impossible: ascertain damages for mental anguish to the mother "as a result of the occurrence in question" yet unrelated to the unborn baby's death.

In short, today's opinion is unworkable. Whether the jury has done as it should, in light of the clearest instructions possible under the circumstances, will be a subject that will spawn litigation for years to come. I wish that the Court had given the bench and bar a clearly cognizable cause of action—for the wrongful death of an unborn child resulting from a physician's negligence—instead of leaving plaintiffs with, and defendants subject to, a cause of action that looks like a wrongful death claim but is not.

## IV

In addition, the Court today effectively discriminates in its perception of who suffers mental anguish and the loss of society and companionship when an unborn baby dies. By cobbling together a hollow remedy for Mrs. Sepulveda but not for Mr. Sepulveda, the Court reveals its assumption that only women grieve the death of an unborn child. I do not agree with this view.

We could avoid all of these difficulties by acknowledging that our prior precedent was wrong, and by recognizing that parents have a cause of action for the wrongful death of an unborn baby caused by a physician's negligence.

APPENDIX

Humberto Sepulveda, Jr.
and Olga Sepulveda

vs.

Dr. Elizabeth G. Krishnan.

CAUSE NO. C–2424–82F.

July 15, 1987.

In the 332nd District Court of
Hidalgo County, Texas.

*PLAINTIFFS' ORIGINAL PETITION*

NOW COME Humberto Sepulveda, Jr., and his wife Olga Sepulveda, Plaintiffs, complaining of Dr. Elizabeth G. Krishnan, Defendant, and for cause of action would show:

1. Plaintiffs are residents of Hidalgo County, Texas. Defendant, Dr. Elizabeth G. Krishnan, is a resident of Hidalgo County, Texas, and may be served with citation at her office address of 1331 E. 6th Street, Weslaco, Texas.

2. Defendant Dr. Elizabeth G. Krishnan is a practicing physician in obstetrics and gynecology, holding herself out to the general public as qualified and competent to care for patients who require medical attention with all the necessary care and precaution expected of such physicians. At all times material, Plaintiff Olga Sepulveda was a patient of Defendant Dr. Krishnan.

3. Defendant Elizabeth G. Krishnan has been notified of Plaintiffs' health care liability claim at least sixty days prior to the filing of this lawsuit, and all conditions precedent required by Article 4590i, Section 4.01, Texas Revised Civil Statutes, have been met.

4. On or about August 6, 1985, Plaintiff Olga Sepulveda presented herself at Defendant's office for prenatal care and treatment, and for the delivery of her first child. During the course of her pregnancy, Plaintiff developed preeclampsia. Defendant Dr. Krishnan was negligent in that she failed to exercise the care of an ordinary prudent obstetrician by providing the necessary diagnosis, prenatal supervision, and prompt treatment of the Plaintiff's preeclampsia.

5. As a direct and proximate result of the Defendant's negligence, Plaintiffs' daughter, Patricia Sepulveda, died, and Plaintiffs have been caused to suffer severe mental pain, anguish, grief, and sorrow. Additionally, Plaintiffs have been caused to suffer the loss of society, companionship, and affection of their daughter, Patricia Sepulveda, deceased. Plaintiffs have also incurred expenses for funeral and burial for Patricia reasonably suitable to her station in life.

6. By reason of Article 4590i, Section 5.01, Texas Revised Civil Statute, Plaintiffs are precluded from pleading a specific amount of money claimed as damages. The Plaintiffs believe and allege that they have been damaged in a sum far in excess of the jurisdictional limits of this court.

WHEREFORE, Plaintiffs pray the Defendant be cited to appear and answer, that this case be tried before a jury, that upon final trial Plaintiffs recover judgment against the Defendant in a sum far in excess of the minimum jurisdictional limits of this court, prejudgment and post-judgment interest as allowed by law, that they recover costs of court, and for such other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

EWERS, TOOTHAKER, AB-BOTT,
TALBOT & HAMILTON
P.O. Box 3670
McAllen, Texas 78502
(512) 686–3771
by: /s/ Stephen P. Dietz
Stephen P. Dietz
State Bar No. 05857300
Attorneys for Plaintiffs

PLAINTIFFS DEMAND A JURY TRIAL.

CORNYN, Justice, dissenting.

Today the Court holds that Ms. Olga Sepulveda can recover mental anguish suffered as a result of the loss of her stillborn fetus. 916 S.W.2d 482. Because Ms. Sepulveda's action is, in substance, a wrongful death claim, the Court's holding conflicts with our previous decision in *Witty v. American Gen-*

*eral Capital Distributors, Inc.,* 727 S.W.2d 503 (1987). I respectfully dissent.

Ms. Sepulveda alleges that "Defendant Dr. Krishnan was negligent in that she failed to exercise the care of an ordinary prudent obstitrician [sic] by providing the necessary diagnosis, prenatal supervision, and prompt treatment of the Plaintiff's preeclampsia." However, Ms. Sepulveda does not claim to have suffered *any* damages to herself as a result of the preeclampsia. Rather, paragraph 5 of the Plaintiff's Original Petition sets forth Ms. Sepulveda's only claims for damages, which relate solely to the loss of her fetus:

As a direct and proximate result of the Defendant's negligence, Plaintiffs' daughter, Patricia Sepulveda, died, and Plaintiffs have been caused to suffer severe mental pain, anguish, grief, and sorrow. Additionally, Plaintiffs have been caused to suffer the loss of society, companionship, and affection of their daughter, Patricia Sepulveda, deceased. Plaintiffs have also incurred expenses for funeral and burial for Patricia reasonably suitable to her station in life.

This Court has recently held that "no cause of action may be maintained for the death of a fetus under the wrongful death statute until the right to bring such action is afforded by the legislature." *Witty v. American Gen. Capital Distrib., Inc.,* 727 S.W.2d 503, 506 (1987). Ms. Sepulveda asserts nothing more than the right to recover for the death of her fetus or, in other words, a wrongful death claim. The Court's holding that Ms. Sepulveda can recover mental anguish damages for the loss of her fetus, when the same recovery was expressly denied Ms. Witty, cannot reasonably be reconciled. The Court, in effect achieves "a result previously prohibited from a front door assault by coming through a back door." *Crites v. Pietila,* 826 S.W.2d 175, 177 (Tex.App.—El Paso 1992) (Koehler, J., dissenting), *rev'd,* 851 S.W.2d 185 (1993).

Thus, I share the opinion expressed by Justice Gonzalez in his dissenting opinion that the Court's holding today implicitly overrules *Witty* and its progeny. 916 S.W.2d 487–488. However, unlike Justice Gonzalez, I believe the Court should resist the urge to

revisit its earlier cases here. In this case, as in other cases of statutory interpretation, the Legislature is empowered to provide a remedy as it sees fit. If the Legislature wants to permit parents to recover for the loss of a fetus, it can amend the wrongful death statute. Absent such legislative action, we should not retreat from our holding in *Witty*, nor should we allow plaintiffs to contravene an act of the Legislature by doing indirectly what they cannot do directly.