

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00244-CV

_____

SHERI M. PUFFER, M.D. AND
WOMEN'S HEALTH SERVICES ARLINGTON, PLLC, Appellants

V.

CANDACE WILLIAMS, Appellee

---

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-342966-23

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Opinion by Chief Justice Sudderth

**OPINION**

When a doctor's negligent failure to perform a sterilization procedure leads to a mother's unplanned pregnancy, can the mother recover damages for the noneconomic hardships of that pregnancy? The Texas Supreme Court recently provided the answer: No. *See Noe v. Velasco*, 690 S.W.3d 1, 3–12 (Tex. 2024).

In *Noe v. Velasco*, the Court held that a mother cannot recover "for the mental anguish and physical pain" of a negligently caused pregnancy because pregnancy is "inseparable from[] bringing about the child's life," and "Texas law does not regard a healthy child as an injury." *Id.* at 10–12. So although pregnancy "undoubtedly impose[s noneconomic] costs on the mother"—from her physical "discomfort" to her "worry" about "the weight of responsibility"—those costs are not compensable injuries in Texas. *Id.* at 5–12 (noting that "not every consequence of another's tortious conduct is an injury or . . . a compensable element of damages in every case").

The question presented here is whether this rule still applies when the unplanned pregnancy does not result in "a healthy child," *id.*—when the mother has an abortion rather than carrying the pregnancy to term. Appellants Dr. Sheri M. Puffer and Women's Health Services Arlington, PLLC (together, Dr. Puffer) argue that the bar on noneconomic damages still applies; Appellee Candace Williams argues that it does not. This appears to be an issue of first impression.

But it is an issue of first impression in name only, as *Noe*'s logic is clear: Pregnancy is "inseparable from[] bringing about [a] child's life"—no matter the

2

pregnancy's outcome—so a mother cannot recover for the noneconomic hardships inherent in a negligently caused pregnancy. *Id.* at 9–12. Because such hardships are the sole basis for Williams's award of compensatory damages, and because those damages are barred under Texas law, we will reverse and render.

## I. Background

In 2021, Williams was pregnant with twins, and her pregnancy was considered high-risk. Although she contemplated having an abortion, she instead decided to carry the twins to term but asked Dr. Puffer to perform a tubal ligation sterilization procedure[1] when the twins were delivered via cesarean section. Dr. Puffer agreed and scheduled the procedure.

For reasons unknown, the tubal ligation was not performed at the time of Williams's cesarean section.[2] And more importantly, Williams was not told that the tubal ligation had not been performed. Consequently, Williams became pregnant again in 2022.[3] And again, her pregnancy was considered high-risk.

---

[1]A tubal ligation is often colloquially referred to as having one's "tubes tied."

[2]Dr. Puffer admitted that she had failed to perform the tubal ligation but denied that the failure was a breach of the standard of care. She testified that "there[ were] many reasons a tubal ligation might not be performed" and that—although she could not remember why she had not performed Williams's—even if she had simply "forget[ten]," that was "still an example of a reason it wasn't done," so she met the standard of care.

[3]The evidence showed that, after the birth of Williams's twins, she returned to Dr. Puffer's office for a visit. Because Williams believed the tubal ligation had been performed, she stated as much to Dr. Puffer, and Dr. Puffer took her word for it. Dr.

3

Due in part to her health concerns, Williams decided to have an abortion. However, the decision took an emotional toll on her. She later testified that she "felt guilty" and "convicted,"[4] she "didn't even come out of [her] room for months," and she "withdrew from [her] friends" due to their perceived "judgment." The experience also impacted Williams's marriage. She explained that, although her husband had participated in the decision to have an abortion, "just the fact that we had to make that decision, and . . . we didn't want to" caused them to "grow[] distant."

Williams sued Dr. Puffer for medical malpractice,[5] seeking noneconomic damages for her pregnancy-related mental anguish—specifically, for the mental anguish surrounding her "difficult decision . . . to terminate her pregnancy"—and exemplary damages to punish Dr. Puffer's gross negligence.[6] A jury awarded $250,000 and $100,000 respectively.[7]

---

Puffer later stated that she "wish[ed] that [she had] looked at [her] operative report" during Williams's office visit, but because she did not, she did not realize the tubal ligation had not been performed.

[4]Williams explained that "[a]bortion is not something that [her] family supports in [their] ethics and values."

[5]Williams alleged that Women's Health Services Arlington was vicariously liable for the negligence.

[6]Although Williams pleaded for economic damages as well, she did not present any evidence of economic damages at trial, and the jury was not asked to determine or award any.

[7]The Texas Supreme Court handed down *Noe* approximately nine months before trial. *See Noe*, 690 S.W.3d at 1 (reflecting date of May 10, 2024). Dr. Puffer

4

## II. Discussion

This appeal hinges on a single question:[8] whether Texas law permits Williams to recover damages for the mental anguish arising from her unplanned pregnancy.[9] In other words, this appeal hinges on whether *Noe* applies. *See generally Noe*, 690 S.W.3d at 3–12.

In *Noe*, as here, a doctor's failure to perform a tubal ligation resulted in an unplanned pregnancy. *Id.* at 3–4. But unlike Williams, the mother in *Noe*—Grissel Velasco—did not have an abortion; she gave birth to the unplanned child. *Id.* at 4. Nonetheless, the pregnancy brought Velasco significant mental anguish. *Velasco v. Noe*, 645 S.W.3d 850, 866 (Tex. App.—El Paso 2022), *rev'd in part*, 690 S.W.3d 1 (Tex. 2024).

---

repeatedly sought relief based on *Noe*—in special exceptions, in a summary judgment motion, in a motion for a directed verdict, in objections to the jury charge, and in a motion for new trial.

[8]In Dr. Puffer's other three appellate issues, she argues that (1) Williams's decision to have an abortion broke the chain of causation such that there was insufficient evidence of that element; (2) there was insufficient evidence to support the jury's award of mental anguish damages; and (3) there was insufficient evidence to support the jury's gross negligence finding and award of exemplary damages. We do not reach these issues. *See* Tex. R. App. P. 47.1.

[9]This is a pure question of law subject to de novo review. *See Noe*, 690 S.W.3d at 3 (holding "as a matter of law" that pregnancy-related "[n]oneconomic damages . . . are not recoverable" in Texas); *Hardin v. Obstetrical & Gynecological Assocs. P.A.*, 527 S.W.3d 424, 435 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (applying de novo standard of review to trial court's conclusion that mental anguish damages premised on child's birth were not recoverable).

Velasco produced evidence that, when she discovered her unplanned pregnancy, she was "distraught [and] worried"; she "felt guilty for feeling angry"; she became "depressed" and "suicidal"; and she "had fits of crying, had difficulty sleeping, . . . [and] felt weight on [her] chest." *Id.* And, like Williams, Velasco sought to recover for these pregnancy-related noneconomic hardships. *Noe*, 690 S.W.3d at 4; *Velasco*, 645 S.W.3d at 864–66.

The intermediate court of appeals held that such noneconomic damages were recoverable. *See Velasco*, 645 S.W.3d at 864–66. It distinguished between the noneconomic aspects of raising an unplanned child and the "physical pain and psychological stressors sustained by [the mother]" due to the "financial, physical, and emotional toll of pregnancy and childbirth." *Id.* at 865; *see Noe*, 690 S.W.3d at 10 (describing intermediate court's distinction). The court noted that there are "situations where a person . . . does not go home with a child (whether through abortion, miscarriage, stillbirth or adoption)," so the person "do[es] not have the redemptive experience of raising the child to 'compensate' them for having to carry and deliver [the] child against their wishes." *Velasco*, 645 S.W.3d at 865. Thus, the court reasoned, the law should distinguish "between the feelings one experiences in raising a child and the feelings one experiences in carrying and birthing a child." *Id.*

But the Texas Supreme Court rejected this distinction as "unpersuasive and unworkable." *Noe*, 690 S.W.3d at 10. It explained that "[p]regnancy and childbirth are necessary to (and inseparable from) bringing about the child's life," so "[t]o award

6

money damages for experiences inherent to a healthy birth wrongly suggests the mother's rightful position is one where the child had never been born—i.e., that carrying a healthy baby to term is an injury." *Id.* at 10–11. The Court acknowledged that "[p]regnancy, childbirth, and parenthood undoubtedly impose [noneconomic] costs on the mother," including "the physical pain and discomfort that accompany pregnancy and childbirth and the weight of responsibility and worry a parent experiences." *Id.* at 10. Nonetheless, "because the birth and life of a healthy child do not constitute an injury" under Texas law, the Court held that Velasco could not recover any noneconomic damages for the burdens inherent in her pregnancy.[10] *Id.* at 10–12.

In so holding, the Court reviewed its half-century of precedent barring noneconomic damages in related contexts. *See id.* at 5–9. In *Jacobs v. Theimer*, for example, a doctor had negligently failed to diagnose a pregnant woman with rubella, and as a result of the rubella, the child had been born with defective major organs. 519 S.W.2d 846, 847 (Tex. 1975); *see Noe*, 690 S.W.3d at 5–6 (discussing *Jacobs*). The mother sued, seeking mental anguish and other damages and claiming that if she had known of the defects, she would have had an abortion. *Jacobs*, 519 S.W.2d at 847–48.

---

[10]Although Velasco could not recover noneconomic damages, the Court held that she could recover "medical expenses incurred during the pregnancy and postpartum period as a result of [the] medical negligence" as well as "the expenses incurred for the [unperformed] sterilization procedure." *Noe*, 690 S.W.3d at 11. But Velasco had not produced any evidence of such medical expenses. *Id.* at 12.

The Texas Supreme Court held that the mother could not recover for her mental anguish because such noneconomic damages would be "based upon speculation as to the quality of life and as to the pluses and minuses of parental mind and emotion." *Id.* at 849; *see Crawford v. Kirk*, 929 S.W.2d 633, 637 (Tex. App.—Texarkana 1996, writ denied) (op. on reh'g) (recognizing that "*Jacobs* precludes damages for emotional anguish experienced by the parents of a deformed child" and applying same rule to bar recovery for mental anguish stemming from birth of unplanned healthy child); *see also Noe*, 690 S.W.3d at 7 (citing *Crawford* with approval).

Again, in *Nelson v. Krusen*, the Court held that noneconomic damages were not available when a child sought to recover for his own "wrongful life." 678 S.W.2d 918, 924–25 (Tex. 1984) (op. on reh'g); *see Noe*, 690 S.W.3d at 6 (discussing *Nelson*). The child alleged that, absent the doctor's negligence, his parents would have had an abortion, and he would have been spared "the pain and suffering of having to live with muscular dystrophy." *Nelson*, 678 S.W.2d at 920, 924. But the Texas Supreme Court held that the plaintiff could not recover noneconomic damages "for being alive"—even if that life was painful—as "a weighing of life against non-life[ is] a calculation that cannot rationally be made." *Id.* at 924–25 (explaining further that "it is impossible to rationally decide whether the plaintiff has been damaged at all").

8

This precedent reveals that, although *Noe* clarified the legal landscape in Texas, its holding was not revolutionary.[11] And its logic was plain: Pregnancy is "inseparable from" the "gift" of human life, so even when a pregnancy is unplanned, traceable to a doctor's negligence, and emotionally grueling, the mother cannot recover for the noneconomic hardships inherent in her pregnancy. *See Noe*, 690 S.W.3d at 10–11.

But Williams insists that pregnancy ending in abortion is materially different. She emphasizes that *Noe* barred noneconomic damages arising from a child-producing pregnancy—a net-positive pregnancy—and she claims that her mental anguish stemmed from "the loss of a pregnancy." *Cf. id.* at 10 (explaining that, "society views a healthy child's arrival as a net boon and a gift"); *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 78–79 (Tex. 1997) (holding that mother could recover mental anguish damages arising from loss of fetus when doctor's negligence during delivery resulted in stillborn baby); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 479–82 (Tex. 1995) (similar, holding that mother could recover mental anguish damages arising from loss of fetus when doctor's negligent care led to stillborn baby). But this argument falls flat.

Williams did not seek compensation for "the loss of a pregnancy." After all, compensatory "damages awards are meant 'to place the plaintiff in the position in which [s]he would have been absent the defendant's tortious act,'" *Noe*, 690 S.W.3d at

---

[11]*But cf. id.* at 6–9 & n.8 (discussing intermediate courts' disagreement on recoverability of noneconomic damages and noting that courts in other jurisdictions have "reached varying conclusions").

10–11, and Dr. Puffer's negligence is what brought about the very pregnancy that was "los[t]." Williams had not planned for or wanted the pregnancy—that was the point of her lawsuit. Had Dr. Puffer performed the tubal ligation or informed Williams of its nonperformance, Williams would not have become pregnant at all.

Instead, Williams attributed her mental anguish to the unpleasant decision forced upon her by the pregnancy—"just the fact that [she and her husband] had to make th[e abortion] decision." We do not doubt the difficulty of this decision; indeed, Williams's testimony detailed the decision's emotional toll. But such difficult decisions are inherent in pregnancy itself; they are among the many "costs" that "[p]regnancy . . . undoubtedly impose[s] . . . on the mother." *Id.* at 7–10 (addressing pregnancy's noneconomic costs and referencing *Hardin*); *cf. Hardin*, 527 S.W.3d at 440–41 (rejecting plaintiff's attempt to distinguish "tortious insemination" from "wrongful pregnancy" and holding plaintiff could not recover mental anguish damages premised on child's birth). And, under *Noe*, a mother cannot recover for the noneconomic hardships inherent in pregnancy—even when those hardships include the agonizing decision to have an abortion rather than carrying the pregnancy to term. *See Noe*, 690 S.W.3d at 10–12.

Because the noneconomic burdens of Williams's pregnancy are the sole basis for her award of compensatory damages, and because a claim for medical malpractice requires some form of legally cognizable compensatory damages, Williams's medical malpractice claim fails as a matter of law. *See id.* at 3, 12 (reinstating summary

10

judgment dismissal of mother's medical negligence claim based on her failure to produce evidence of cognizable damages). We sustain Dr. Puffer's first issue.

And this issue is dispositive, as Williams's lack of compensatory damages undermines her recovery of exemplary damages as well. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a) (providing that, generally, "exemplary damages may be awarded only if damages other than nominal damages are awarded"); *see also* Tex. R. App. P. 47.1.

### III. Conclusion

The question decided today is not one of public policy; it is one of binding precedent. We are not asked to comment on abortion or to second-guess Williams's decision to have one. *See Jacobs*, 519 S.W.2d at 848 (acknowledging that abortion is "a matter of very different but very deep feeling"). We are asked only to determine if *Noe*—a binding case from a higher court—applies. *See Noe*, 690 S.W.3d at 3–12. And it does.

Therefore, applying *Noe*, we reverse the trial court's judgment, and we render judgment that Williams take nothing. *See* Tex. R. App. P. 43.2(c).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: April 23, 2026

11