NUMBER 13-99-136-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


__________________________________________________________________


ELIZABETH KRISHNAN, M.D.
, Appellant,


v.



SENOVIO RAMIREZ, JR., TEMPORARY GUARDIAN 

OF PROPERTY OF HUMBERTO SEPULVEDA, III, AS 

HEIR OF OLGA RAMIREZ SEPULVEDA, DECEASED
, Appellee.

__________________________________________________________________


On appeal from the 370th District Court


of Hidalgo County, Texas.


__________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Rodriguez, and Chavez(1)


Opinion by Justice Rodriguez




 Appellant, Dr. Elizabeth G. Krishnan, appeals from a judgment
entered against her in this medical malpractice suit. The jury awarded
$250,000.00 for mental anguish damages. Appellant raises eleven
issues. We affirm.

 Humberto Sepulveda, Jr. and Olga Sepulveda filed suit against
appellant for mental anguish damages arising from appellant's
supervision and treatment of Mrs. Sepulveda during her pregnancy,
which allegedly resulted in the stillbirth of their child. They alleged
appellant was negligent in failing to exercise the care of an ordinary
prudent obstetrician, specifically, in failing to, inter alia, diagnose and
promptly treat Mrs. Sepulveda's condition of preeclampsia.(2) The
Sepulvedas also alleged appellant's negligence caused the death of the
fetus as a part of the body of the mother, and caused Mrs. Sepulveda
to suffer mental anguish.

 During the pendency of the litigation, Mrs. Sepulveda died. Mr.
Sepulveda filed a disclaimer, renunciation and assignment of any
interest in his wife's cause of action in favor of her sole surviving minor
child, Humberto Sepulveda, III. The case was prosecuted by appellee,
Senovio Ramirez, Jr., temporary guardian of the estate and the next
friend of the minor child.

 Appellant bases her appeal on the following issues: (1) the
evidence was insufficient to establish causation; (2) the Sepulvedas
denied appellant access to evidence that could have conclusively
exonerated her by refusing her request to perform an autopsy; (3) the
evidence was insufficient to establish a breach of the standard of care;
(4) the evidence was insufficient to support the $250,000 mental
anguish damage award, or alternately the award was excessive; (5) the
trial court improperly admitted prejudicial evidence of familial
attachment over her objection; (6) charge error in the damage
instruction; (7) appellee misstated the controlling law regarding
damages in her closing argument; (8) appellee failed to prove standing
before submitting the case to the jury; (9) the suit was not brought in
Ramirez's capacity as assignee, only as "heir," entitling appellee to only
two-thirds of the amount awarded the decedent; (10) the trial court
erred in reading back testimony without a request from the jury as
required by rule of civil procedure 287; and (11) cumulative error
prejudiced appellant.

 By her first three issues, appellant challenges the legal and factual
sufficiency of the evidence. In addressing legal sufficiency, we must
consider all of the record evidence in a light most favorable to the party
in whose favor the verdict has been rendered, and indulge every
reasonable inference deducible from the evidence in that party's favor. 
See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,
960 S.W.2d 41, 48 (Tex. 1998); Hines v. Comm'n for Lawyer Discipline,
28 S.W.2d 697, 701 (Tex. App.--Corpus Christi, no pet.).

 In reviewing factual sufficiency issues challenging a jury verdict,
we consider and weigh all of the evidence, not just the evidence that
supports the verdict. See City of Princeton v. Abbott, 792 S.W.2d 161,
163 (Tex. App.--Dallas 1990, writ denied) (citing Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986)). We set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. See Cain, 709 S.W.2d at 176; Dyson v. Olin Corp.,
692 S.W.2d 456, 457 (Tex. 1985). The jury, as fact finder, is the judge
of the credibility of witnesses and weight to be accorded their
testimony. See Southwestern Bell Mobile Sys., Inc. v. Franco, 951
S.W.2d 218, 221 (Tex. App.--Corpus Christi 1997), rev'd on other
grounds, 971 S.W.2d 52 (Tex. 1998) (citing Benoit v. Wilson, 239
S.W.2d 792, 796 (Tex. 1951)). Because the appellate court is not the
fact finder, it may not substitute its own judgment for that of the trier
of fact, even if a different answer could be reached on the evidence. 
See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998)
(citing Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986)). The
amount of evidence necessary to affirm a judgment is far less than that
which is necessary to reverse a judgment. See Mayes v. Stewart, 11
S.W.3d 440, 451 (Tex. App.--Houston [14th Dist.] 2000, pet. denied).

 A plaintiff must prove four elements in a medical malpractice
cause of action in order to prevail: (1) a duty by the physician to act
according to a certain standard; (2) a breach of the applicable standard
of care; (3) injury or harm to the plaintiff; and (4) a causal connection
between the breach of the applicable standard of care and the injury or
harm. Gonzales v. Outlar, 829 S.W.2d 931, 933 (Tex. App.--Corpus
Christi 1992, no writ); Garza v. Levin, 769 S.W.2d 644, 645 (Tex. App.--Corpus Christi 1989, writ denied).

 By her first issue, appellant challenges the sufficiency of the
evidence on causation. To establish proximate cause, a plaintiff must
prove foreseeability and cause-in-fact. See Bradley v. Rogers, 879
S.W.2d 947, 953 (Tex. App.--Houston [14th Dist.] 1994, writ
denied)(citation omitted). Appellant challenges only the second prong
of proximate cause, wherein "the plaintiff must establish a causal
connection based upon 'reasonable medical probability,' not mere
conjecture, speculation or possibility." Id. at 953-54 (citing Duff v.
Yelin, 751 S.W.2d 175, 176 (Tex. 1988); Lenger v. Physician's Gen.
Hosp., Inc., 455 S.W.2d 703, 706 (Tex. 1970); Campos v. Ysleta Gen.
Hosp. Inc., 836 S.W.2d 791, 794 (Tex. App.--El Paso 1992, writ
denied)). However, "[a] plaintiff is not required to establish causation
in terms of medical certainty nor is he required to exclude every other
reasonable hypothesis." See Bradley, 879 S.W.2d at 954 (citing King
v. Flamm, 442 S.W.2d 679, 682 (Tex. 1969)).

 Appellant contends that the evidence included too many unknown
variables to establish causation to a reasonable degree of medical
probability, including: (1) microcephaly, which might possibly indicate
other congenital abnormalities; (2) placental necrosis and infection; and
(3) the fact that the umbilical cord was wound around the fetus. We
look first at appellant's assertion that there was evidence suggesting
the possibility of the fetus being microcephalic. 

 The testimony revealed that in Mrs. Sepulveda's medical record, 
appellant noted that the "Baby looked microcephalic." Appellant
testified at trial that the fetus appeared "small headed." However,
appellant also testified that the fetus looked grossly normal and was
"not abnormally small." There were no entries in Mrs. Sepulveda's
prenatal or hospital records of abnormal measurements of the fetus's
head. There were no sonogram measurements of the head before
delivery or a tape measurement of the head after stillbirth. Further,
appellee's expert, Dr. Angeline Williams, a board certified obstetrician
gynecologist, testified that appellant conducted five sonograms over the
course of Mrs. Sepulveda's pregnancy, during which time microcephaly
could have been diagnosed, but was not. Dr. Williams also testified
that the fetus appeared normal, not microcephalic. It did not have other
congenital deformities such as low set ears or wide set eyes, which
often accompany microcephalic children. In addition, Dr. Williams
testified that fetuses that die in utero often appear microcephalic after
birth because, once dead, they often become dehydrated and the skull
bones tend to come closer together causing the head to appear smaller. 
Finally, even when asked to assume that the fetus was indeed
microcephalic, Dr. Williams testified that microcephaly did not cause the
demise of the fetus.

 Appellant also contends there was objective evidence that showed
placental necrosis and infection, and testified there was no way of
telling when the infection occurred. However, the pathology
consultation report, the objective evidence to which she refers, provided
a diagnosis of "[f]ocal acute necrosis and inflammation of decidua." 
Further, Dr. Williams testified that the pathology report of the placenta
indicated that there was no sign of infection, and no reasonably prudent
doctor could opine that Mrs. Sepulveda was suffering from chronic
infections which caused the fetal demise.

 Finally, appellant contends the umbilical cord wound around the
fetus was a factor to be considered in determining causation. Appellant
testified that, in her opinion, the cord caused the demise of the fetus. 
Further, as noted by appellant, Dr. Williams did testify, on cross-examination, that she had witnessed unexplained fetal demise; that
there were possibly unknown factors; and that the fetal demise could
have been caused by the cord. However, Dr. Williams directly stated
that upon review of the records and testimony, it was her opinion,
based upon reasonable medical probability, that neither microcephaly
(decreased head size), venereal disease, yeast infection, the cord being
wrapped around the fetus, nor congenital abnormality caused the fetal
demise, but rather it was appellant's failure to admit Mrs. Sepulveda to
the hospital for close observation of the preeclampsia and delivery of the
fetus that caused its death. Dr. Williams specified a precise time when
the fetus would have been born alive. She testified with certainty that
"there [was] no doubt in [her] mind" that the baby would have been
born alive if appellant had adhered to the standard of care following
Mrs. Sepulveda's office visit of January 28 and either delivered the full-term fetus or hospitalized the patient for close observation for signs of
fetal distress. Dr. Williams also testified "there [was] no doubt in [her]
mind" that the fetus would have been born alive had appellant followed
the standard of care after Mrs. Sepulveda's February 3 office visit
because "[t]he baby was alive on the 3rd of February. And . . . unless
there was something catastrophic to happen during labor and delivery,
then that baby would have been born alive." Moreover, appellant
testified that she could have delivered the fetus alive between January
28 and February 3, and that Mrs. Sepulveda reported the fetus's last
movement occurred on the evening of February 5.

 Based on our review of the evidence, it is apparent that appellee
addressed the factors about which appellant now complains. He is not
required to exclude every reasonable hypothesis, nor is he required to
establish causation in terms of medical certainty. See Bradley, 879
S.W.2d at 954 (citations omitted). We conclude appellee established
causation to a reasonable degree of medical probability.

 Appellant further contends by her first and second issues that she
was denied the opportunity to perform an autopsy which could have
determined whether the fetal demise was due to congenital abnormality
or placental infection. She asserts a spoliation of evidence argument
and the offensive use doctrine. See Trevino v. Ortega, 969 S.W.2d 950,
953 (Tex. 1998) (when party believes other party has improperly
destroyed or discarded relevant evidence, she may move for sanctions
or request a spoliation instruction); Texas Dep't of Pub. Safety Officers
Ass'n v. Denton, 897 S.W.2d 757, 761 (Tex. 1995) (offensive use
doctrine may be asserted against plaintiff who seeks affirmative relief
yet maintains evidentiary privileges that protect him from discovery of
outcome determinative information not otherwise available to
defendant). Appellant contends she was denied access to evidence
when her request for an autopsy of the fetus was denied.

 At no time during the trial did appellant seek relief based on
withholding or destroying evidence. See Ortega, 969 S.W.2d at 953. 
Although there was testimony about an autopsy and the possibility that
it could have illuminated additional factors in the fetal demise, appellant
did not seek appropriate remedies in the trial court to preserve error for
appeal. See Tex. R. Evid. 103; Ortega, 969 S.W.2d at 953. We conclude
this issue has been waived. See Tex. R. App. P. 33.1(a).

 Accordingly, having considered all of the record evidence in a light
most favorable to the party in whose favor the verdict has been
rendered, and indulging every reasonable inference deducible from the
evidence in that party's favor, we conclude there is evidence to
establish causation. Appellant's legal sufficiency challenge fails. 
Further, having considered and weighed all of the evidence, we
conclude the jury's finding is not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Appellant's
factual sufficiency challenge to causation fails. Issues one and two are
overruled.

 By her third issue, appellant complains that the evidence was
insufficient to establish a breach of the standard of care. Because it is
not clear from appellant's brief whether she is challenging legal
sufficiency, factual sufficiency, or both, we will address both. See
Hinojosa v. Housing Auth. of Laredo, 940 S.W.2d 763, 765 (Tex. App.--San Antonio, 1997, no writ).

 According to appellant, in 1986, the published recommendations
of the American College of Obstetricians and Gynecologists (ACOG) set
out that a woman was a candidate for delivery if her blood pressure
kept rising in the face of treatment and the cervix was favorable. 
Appellant contends that, at that time, the recommended course of
treatment for a compliant patient who showed improvement with
treatment was ambulatory management, with semi-weekly visits, fetal
surveillance, bed rest, patient education, daily weighing, and home
blood pressure monitoring. Appellant urges she adhered to this
standard of care because Mrs. Sepulveda's condition was improving,
her blood pressure decreased with the ordered treatment, her cervix
was not ready for delivery, and the fetus was always responsive to
tests, had good heart tones, and never showed distress. She contends
that Mrs. Sepulveda was not a candidate for delivery on January 23
when mild preeclampsia was first diagnosed, or on January 28, or
February 3; rather, she was a perfect candidate for ambulatory
management with monitoring.

 Appellee disputes appellant's interpretation of ACOG's
recommendations. He argues that, in 1986, the ambulatory treatment
with fetal surveillance and blood pressure monitoring that appellant sets
forth as the recommended treatment was for "mild pregnancy-induced
hypertension and an immature fetus." Appellee contends that it was
not the recommended treatment for a mature fetus. He argues the
1986 ACOG bulletin set out if preeclampsia occurred when the fetus
was mature, essential management included preventing convulsions,
controlling blood pressure, and delivering the baby.

 Dr. Williams, appellee's expert, testified that appellant breached
the standard of care on January 23 when mild preeclampsia was
diagnosed and appellant failed to order strict bed rest, fetal monitoring,
and testing. Dr. Williams opined that the standard of care dictated that
the baby be delivered, and that there was no other option for any
reasonably prudent physician. Furthermore, Dr. Alberto Cepeda,
appellant's expert, testified that failure to deliver a mature fetus after a
diagnosis of mild preeclampsia, or to hospitalize, monitor, or order strict
bed rest without work would be a breach of the standard of care. 
Appellant testified that after her diagnosis of mild preeclampsia, she
took none of these three actions; instead, she allowed Mrs. Sepulveda
to continue to work. The jury could reasonably infer that appellant
failed to follow the applicable standard of care for treatment of
preeclampsia when the fetus is mature, as defined by her own expert,
the ACOG bulletin, and Dr. Williams.

 Considering all of the record evidence in a light most favorable to
the party in whose favor the verdict has been rendered, and indulging
every reasonable inference deducible from the evidence in that party's
favor, we conclude there is legally sufficient evidence to establish a
breach of the standard of care. Appellant's no-evidence challenge fails. 
Further, considering and weighing all of the evidence, we conclude the
jury's finding is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Appellant's factually
sufficiency challenge to breach of duty also fails. Accordingly,
appellant's third issue is overruled.

 In her fourth issue, appellant contends the evidence was legally or
factually insufficient to support the award of $250,000 in mental
anguish damages. Appellant alleges the evidence did not establish that
the mental anguish suffered was the result of the loss of the fetus as
part of the mother's body, as opposed to the loss of the fetus as a
separate individual. Appellant contends that the overwhelming
evidence, specifically the evidence referring to the baby and funeral
services, supports only noncompensable mental anguish due to the loss
of the fetus as a separate individual. See Edinburg Hosp. Auth. v.
Trevino, 941 S.W.2d 76, 79 (Tex. 1997).

 A woman can recover mental anguish damages resulting from
negligent treatment that causes the loss of a fetus as part of the
woman's body; however, she may not recover for the loss of the fetus
as an individual. See Trevino, 941 S.W.2d at 79; Krishnan v.
Sepulveda, 916 S.W.2d 478, 482 (Tex. 1995) (Krishnan I); Escalante v.
Koerner, 28 S.W.3d 641, 645 (Tex. App.--Corpus Christ, pet. filed).

 The term "mental anguish" implies a relatively high degree
of mental pain and distress. It is more than mere
disappointment, anger, resentment or embarrassment,
although it may include all of these. It includes a mental
sensation of pain resulting from such painful emotions as
grief, severe disappointment, indignation, wounded pride,
shame, despair and/or public humiliation.


Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995) (quoting
Trevino v. Southwestern Bell Tel. Co., 582 S.W.2d 582, 584 (Tex. Civ.
App.--Corpus Christi 1979, no writ)). To survive a legal sufficiency
challenge, the plaintiff must present "direct evidence of the nature,
duration, or severity of [her] mental anguish, thus establishing a
substantial disruption in [her] daily routine." Parkway, 901 S.W.2d at
444. Such evidence can be in the form of the testimony of third parties. 
See id. In the absence of such direct evidence, the court will apply
"traditional 'no evidence' standards to determine whether the record
reveals any evidence of 'a high degree of mental pain and distress' that
is 'more than 'mere worry, anxiety, vexation, embarrassment, or anger'
to support any award of damages" Id. (quoting J.B. Custom Design &
Bldg. v. Clawson, 794 S.W.2d 38, 43 (Tex. App.--Houston [1st Dist.]
1990, no writ))).

 The evidence in this case reveals Mrs. Sepulveda last felt the fetus
move on the night of February 5. On the morning of February 6, 1986,
Mrs. Sepulveda attended her last pre-natal visit with appellant. When
appellant detected no fetal heart tone, she conducted an ultrasound
examination and determined that the fetus was not viable. Appellant
informed Mrs. Sepulveda that the fetus was dead. Mrs. Sepulveda was
admitted to the obstetric ward with a diagnosis of "fetal demise at 38
weeks of gestation."

 Esmeralda Ramirez Correa, Mrs. Sepulveda's younger sister,
testified that her sister was excited and pleased about her pregnancy,
and took good care of herself. Correa visited Mrs. Sepulveda the
evening she was admitted to the hospital. Correa testified:

 [Olga] was crying. She couldn't believe that she had lost the
baby after having her almost the whole nine months. She
was devastated. And she -- she felt really guilty that a part
of her had -- a part of her body had failed her. And she was
broken hearted. . . . I think she was in disbelief. . . . She
cried the whole time."


On cross examination, Correa provided the following testimony:

 Q: Your sister obviously was appropriately happy in order
in her pregnancy [sic], the fact that she was pregnant,
right?


 A: She was very excited she was pregnant.


 Q: Right. [A]nd when this situation developed where the
fetus had died, she was saddened about that fact, too,
correct, as you would expect?


 A: Of course. She was very broken hearted.


 Q: And if I understand correctly, she related that to the
fact that her baby had died, correct? [Y]ou mentioned
that she had mentioned --


 A: It was a part of her that died.


 Q: And -- 


 A: Yes, part of your body dies. [Y]ou carry a baby. Of
course, men don't know how it feels like, but women
do. You carry a baby for months. It dies. It is a part of
you that dies.


 Q: I understand. But also, it is a child, you perceive that
it is a child?


 A: Of course.


 Q: And --


 A: Yes, it is, it is a fetus until it is born, yes. But this baby
was born.


 Q: And a part of the grief that you feel in regards to that is
because you lost your child?


 A: Could you state that again, please.


 Q: The part of the grief that you are going to feel,
naturally, when that occurs, is the fact that a child that
you have anticipated having, you now do not have?


 A: Yes, but along with that, along with that, it is a part of
you, a part of me, a part of Olga that dies, and the
failure, the disappointment that she went through
besides actually losing the baby, your self-esteem. It
is like you are not worthy.


 Additionally, Sylvia Ramirez Davila, another sister of Mrs.
Sepulveda, testified that in the hospital room, Mrs. Sepulveda was
crying, alone and with others. "She was devastated. She was just
broken, kept crying and crying, and nothing could seem to calm her
down. . . . [S]he was crying with hurt, with pain, with, you know, she
was crying harder. . . ." Davila believed Mrs. Sepulveda was going
through depression, an "emotional state of mind." She had gone
through nine months with the fetus in her body and all of a sudden, she
lost it. Davila believed her sister felt she was losing a part of her body,
a part of herself; she felt like a failure. Ramiro Ramirez, Mrs.
Sepulveda's brother, stayed with her that evening. Ramirez testified
his sister cried off and on through the night. She was "really broken
and really weeping, something that [he] had never seen in her. Kind of
like after all these years, she kind of felt like -- like a failure. . . ." To
Ramirez, his sister must have felt like the world had closed up on her,
that there was no future for her. She was confused and anguishing
about herself asking, "How could this happen to me?" Ramirez's wife,
Maria Elena Ramirez, also testified that when she and her husband
walked into the hospital room, Mrs. Sepulveda looked devastated, and
held her brother's hand and cried. She held herself [her body, her
stomach] and said to her brother, "I lost my baby. My baby, Ramiro, it
is gone."

 The following nurses' entries in the hospital record also show Mrs.
Sepulveda cried at intervals on February 6: "Questions held due to
emotional status of the patient. Emotional state: Weepy. Has just
learned of fetal demise." "Weeping loudly." The nurses' notes entered
at 5:00 p.m. on February 6, state: "Continues frequent crying." Mrs.
Sepulveda complained of a headache that day. Emotional support was
provided. On February 7, the entries reveal that Mrs. Sepulveda was
crying and depressed.

 From this direct evidence, the jury could have determined that the
nature of the mental anguish Mrs. Sepulveda was experiencing was,
in part, the result of the loss of the fetus as part of her body. The jury
could also have determined the duration and severity of the mental
anguish she suffered, thus, establishing a substantial disruption in the
her daily routine.

 Appellant also contends there is no evidence that Mrs. Sepulveda
suffered mental anguish as a result of having to undergo surgery. See
Trevino, 941 S.W.2d at 78 (Pitocin administered after labor progressing
too slowly; however, patient began hemorrhaging and emergency
caesarean section performed). While it is true Mrs. Sepulveda did not
undergo a caesarean section or suffer mental anguish as a result of
having to undergo surgery as did the plaintiff in Trevino, she learned of
the death of the fetus on the morning of February 6. The fetus was not
delivered until approximately noon on February 7, after almost twenty-four hours of labor which was induced by the drug, Pitocin. Mrs.
Sepulveda endured the rigors of labor and childbirth, all the while
knowing that it would result in a stillbirth of a dead fetus.

 Accordingly, we conclude the above referenced testimony
constitutes evidence of the nature, duration and severity of Mrs.
Sepulveda's mental anguish. The evidence relates, in part, to the grief
Mrs. Sepulveda felt over the loss of the fetus as part of her own body,
not as a separate individual. Therefore, appellant's legal sufficiency
argument fails. Further, we conclude that the testimony constitutes
factually sufficient evidence to support the conclusion that Mrs.
Sepulveda suffered compensable mental anguish. Appellant's factual
sufficiency argument fails.

 Appellant alternately contends that the jury's award was
excessive. An allegation that damages are excessive invokes the same
standard of review as any factual sufficiency challenge. See Maritime
Overseas, 971 S.W.2d at 406. To withstand appellate scrutiny, the
damages award must reflect an amount that, in the standard language
of the jury charge, would fairly and reasonably compensate Mrs.
Sepulveda for her mental anguish. See Saenz v. Fidelity & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996). Because personal
injury damages are unliquidated and are not capable of certain
measurement, the jury has broad discretion in assessing the amount of
damages in a personal injury case. See Transit Management Co. of
Laredo v. Sanchez, 886 S.W.2d 823, 826 (Tex. App.--San Antonio 1994,
no writ); Pipgras v. Hart, 832 S.W.2d 360, 366 (Tex. App.--Fort Worth
1992, writ denied). We defer to the jury's discretion in determining
awards for such damages. See George Grubbs Enters., Inc. v. Bien,
881 S.W.2d 843, 858 (Tex. App.--Fort Worth 1994), rev'd on other
grounds, 900 S.W.2d 337 (Tex. 1995); Arrington v. Paschall, 352
S.W.2d 866, 870 (Tex. Civ. App.--Dallas 1961, writ ref'd n.r.e.).

 Although appellant complains that the $250,000 award is
excessive, she does not explain why she believes it is excessive. It
appears that appellant is arguing the award is excessive because the
mental anguish suffered by Mrs. Sepulveda was due to the loss of the
fetus as a separate individual and therefore not compensable. However,
we have already concluded the evidence supports a compensable injury
for loss of the fetus as part of her body. Therefore, this argument fails.

 Accordingly, deferring to the jury's discretion in determining this
award for mental anguish, we conclude the jury differentiated between
the two types of losses, concluding Mrs. Sepulveda's mental anguish
was compensable because it resulted from the loss of the fetus as part
of her body. Given the evidence recited above, we conclude the
damages award reflects an amount that would fairly and reasonably
compensate Mrs. Sepulveda for her mental anguish for that loss. We
cannot say that the amount of the jury's award for mental anguish
damages is so contrary to the overwhelming weight of the evidence as
to be manifestly unjust. Appellant's fourth issue is overruled.

 By her fifth issue, appellant contends the trial court improperly
admitted prejudicial evidence of familial attachment. She argues that
the evidence was prejudicial and irrelevant.

 The admission or exclusion of evidence is a matter within the trial
court's exclusive discretion. See Syndex Corp. v. Dean, 820 S.W.2d
869, 873 (Tex. App.--Austin 1991, writ denied).

 To obtain reversal of a judgment based upon error of the trial
court in admission or exclusion of evidence, the following
must be shown: (1) that the trial court did in fact commit
error; and (2) that the error was reasonably calculated to
cause and probably did cause rendition of an improper
judgment.


Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989)
(citations omitted); see Tex. R. App. P. 44.1(a)(1). "To be relevant, the
proposed testimony must be 'sufficiently tied to the facts of the case
that it will aid the jury in resolving a factual dispute.'" E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995) (quoting
United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)).

 Appellant first complains of the following portions of testimony
regarding: (1) Olga carrying the fetus and not letting it go; (2) Olga
saying "My baby, my baby. I can't believe my baby is gone;" (3) funeral
services that were held for the remains; (4) comparisons of the fetal
remains and live born children of a witness; and (5) Olga's behavior at
the funeral services. Appellee, however, contends this testimony was
admissible to provide context and detail regarding the mental anguish
suffered by Mrs. Sepulveda, and to establish Mrs. Sepulveda's conduct,
what she did, what she said, the context of such conduct, and the
witness's present sense impression of Mrs. Sepulveda's emotional
condition.

 This complained-of testimony relates to the nature, duration or
severity of the mental anguish suffered by Mrs. Sepulveda. See
Parkway, 901 S.W.2d at 444. The jury was asked to discern whether
the anguish was felt for the loss of the fetus as part of the body or as
a separate individual. The jury was asked to limit its damage award to
only compensate the former. Additionally, the jury was instructed to
distinguish between the two types of anguish and to award damages
for only one. Finally and importantly, the complained-of testimony was
favorable to the defense to the extent it could arguably have supported
mental anguish resulting from the loss of the fetus as a separate
individual.

 Appellant also complains of testimony regarding the appearance
of the stillborn fetus and of the admission of photographs of the fetus
prepared for the funeral and of Mrs. Sepulveda with her later born son. 
Appellee contends the evidence regarding the fetus was offered to
show the "normal" appearance of the fetus, and the photographs of
Mrs. Sepulveda with her later born son were offered and admitted "to
assist the trier of fact to compare [Mrs. Sepulveda's] weights and . . .
body size." At the request of defense counsel, the court gave a limiting
instruction as to the latter photographs.

 We conclude that the trial court did not abuse its discretion in
making the decision to admit the evidence as it was sufficiently tied to
the facts of the case so as to aid the jury in resolving factual disputes. 
Further, error, if any, was not calculated to cause and probably did not
cause the rendition of an improper judgment. Issue five is overruled. 
See Tex. R. App. P. 44.1(a)(1).

 By her sixth issue appellant urges charge error. She complains
that the court erred in generally instructing the jury that the meaning of
"injury in question" was "the loss of the fetus as a part of the body of
Olga Ramirez Sepulveda." Appellant proposed an instruction that
simply read "the loss of the fetus." The trial court overruled appellant's
objection. On appeal, she contends that the instruction commented on
the weight of the evidence and instructed the jury that the loss of the
fetus was definitely a loss of part of the body.

 Appellant also complains of the following specific damage
instruction: "You are instructed that a woman can recover mental
anguish damages for the loss of a fetus as part of her body, however,
a woman cannot recover mental anguish damages as a result of a loss
of a fetus as a separate individual." Appellant contends the trial court
abused its discretion when it denied her request for the following
language: "Do not include any damages that relate to the grief that
Olga Sepulveda felt over the loss of the fetus as a separate individual
and not as a part of her own body." Appellant argues that appellee's
instruction tells the jury what the litigant may "recover," instead of
telling the jury what it may "award." Appellee contends appellant is
simply urging a distinction without a difference.

 Trial courts have considerable discretion in deciding what
instructions are necessary and in submitting explanatory instructions
and definitions. See State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451
(Tex. 1997); Howell Crude Oil Co. v. Donna Refinery Partners, 928
S.W.2d 100, 110 (Tex. App.--Houston [14th Dist.] 1996, writ denied). 
An appellate court reviews allegations of error in the jury charge under
an abuse of discretion standard. See Texas Dep't of Human Serv. v.
E.B., 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses its
discretion if it acts arbitrarily, unreasonably, or without reference to any
guiding principles. See id; Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 242 (Tex. 1985). "A judgment should not be reversed
because of a failure to submit other and various phases or different
shades of the same question." Sheldon L. Pollack Corp. v. Falcon
Indus., Inc., 794 S.W.2d 380, 383 (Tex. App.--Corpus Christi 1990, writ
denied). 

 Texas Rule of Civil Procedure 273 provides that either party may
present to the court and request written questions, definitions, and
instructions to be given to the jury, and the court may give them or a
part thereof, or may refuse to give them, as may be proper. See Tex. R.
Civ. P. 273. An instruction is improper if it directly comments on the
weight of the evidence, but it shall not be objectionable if it incidentally
comments on the weight of the evidence when it is properly a part of
an instruction. See Tex. R. Civ. P. 277. 

 In the instant case, both sides submitted requested instructions. 
The trial court reviewed the law in light of the Texas Supreme Court
decisions in Krishnan I and Trevino, and charged the jury with an
instruction that mirrored the language of the supreme court. See
Trevino, 941 S.W.2d at 79 (a woman can recover mental anguish
damages resulting from negligent treatment that causes the loss of a
fetus only as part of the woman's body); Krishnan I, 916 S.W.2d at 481,
482 (same). The court informed the parties that any comment which
might be contained in the definition was necessary in order to aid the
jury when considering some of the evidence which may tend to show
mental anguish damages for both the loss of a separate individual and
a part of the body so that it would be clear that only one type of
damages was recoverable: The trial court explained:

 I'm instructing them, that the loss of the fetus--that the
injury is the loss of the fetus as a part of the body. I feel
that's the only way I can keep in line with the Krishnan
Supreme Court case and the Trevino case, to make it clear
that they're not entitled to anything else; they are not
seeking anything else; and even if they were, I wouldn't
allow them to seek anything but mental anguish as a result
of the loss of the fetus as a part of the body of Olga
Sepulveda.


 We conclude the trial court was within its discretion to give the
instructions set out above. Additionally, even had the court abused its
discretion, the language used was clearly not calculated to cause the
rendition of an improper judgment, nor did it cause the rendition of an
improper verdict. See Tex. R. App. P. 44.1(a)(1). Issue six is overruled.

 In her seventh issue(3) appellant complains of the following jury
argument urged by appellee:

 So, all of the mental anguish that has been testified about
here, is mental anguish that she suffered as a result of the
loss of the fetus as a part of her body. 


 Because the courts have held that until the baby is born
alive, it is not an individual.

 To complain about improper jury argument on appeal, "it is
necessary to show: (1) an error; (2) not invited or provoked; (3) that was
preserved by proper trial predicate, such as an objection, a motion to
instruct, or a motion for mistrial; (4) that was not curable by an
instruction, a prompt withdrawal of the statement, or a reprimand by
the judge; and (5) that the argument by its nature, extent, and degree
constituted reversibly harmful error." NationsBank of Tex., N.A. v. Akin,
Gump, Hauer & Felf, L.L.P., 979 S.W.2d 385, 398 (Tex. App.--Corpus
Christi 1998, pet. denied) (citing Standard Fire Ins. Co. v. Reese, 584
S.W.2d 835, 839 (Tex. 1979)).

 Appellant first contends the argument was not provoked or
invited. We disagree. Appellant's own closing argument made
numerous references to Mrs. Sepulveda's mental anguish over the loss
of her baby as a human being. Most specifically, appellant argued,
"[t]he evidence here relates to the loss of the baby as a human being,
and that's not compensable. . . . None of the evidence about the way
that she felt, that she was now pregnant, that she was about to give
birth to her own child, that is not compensable." In summary appellant
also argued,

 You are going to realize that all of that evidence from the
sisters, from the sister-in-law, from the brothers, from the
pictures, all relate to this young lady thinking, mental
anguish, related to the loss of her baby as a human being,
not as a fetus as a part of her body, but as a human being.


It is apparent that appellant invited or provoked appellee to respond
with rebuttal argument that the anguish related to the loss as part of
the mother's body. See Central Nat'l Gulfbank v. Comdata Network,
Inc., 773 S.W.2d 626, 628 (Tex. App.--Corpus Christi 1989, no writ) (to
show error in improper argument, appellant must prove improper
argument was not invited).

 Appellant also complains appellee's argument misstates the
controlling law regarding damages.(4) As appellant notes, the Texas
Supreme Court carefully delineated that a person could recover mental
anguish damages for the loss of a fetus as a part of the body, but not
as a separate individual. See Trevino, 941 S.W.2d at 79. Further, the
Supreme Court has determined that recovery for the loss of a fetus is
precluded when there has been no live birth. See id. at 78 (citing Witty
v. American Gen. Capital Distribs., Inc., 727 S.W.2d 503, 504 (Tex.
1987)); Pietela v. Crites, 851 S.W.2d 185, 187 (Tex. 1993) (citing
Blackman v. Langford, 795 S.W.2d 742, 743 (Tex. 1990) (party
precluded from recovery as a matter of law because no wrongful death
or survival cause of action for the death of a fetus)). Appellee did not
misstate the law of the case regarding damages when he argued that
"all of the mental anguish that has been testified about here, is mental
anguish that she suffered as a result of the loss of the fetus as a part of
her body." To the extent the statement that "[b]ecause the courts have
held that until the baby is born alive, it is not an individual" is arguably
a misstatement of law, we conclude it could have been cured by an
instruction, a prompt withdrawal of the statement, or a reprimand by
the judge, and appellant requested none. See NationsBank, 979 S.W.2d
at 298. Appellant's seventh issue is overruled.

 In issue eight, appellant contends appellee failed to prove standing
before the trial court submitted the case to the jury. "In order for a
person to maintain a suit, it is necessary that he have standing to
litigate the matters at issue." Hunt v. Bass, 664 S.W.2d 323, 324 (Tex.
1984). Generally, personal representatives of a decedent's estate are
the only people entitled to sue to recover estate property. See Shepherd
v. Ledford, 962 S.W.2d 28, 31 (Tex. 1998) (citation omitted). However,
an exception exists, and heirs at law can maintain a survival suit within
the period allowed by law for administration of an estate if they allege
and prove there is no administration pending and none is necessary. 
See id. at 31-32. The issue of standing is purely a question of law for
the court to determine. See Cleave v. George Staton Co., 908 S.W.2d
468, 472 (Tex. App.--Tyler 1995, writ denied).

 Appellee secured an order, signed March 7, 1997, from the
probate court that provided there was "no necessity of administration
of the estate" and "no requirement for the appointment of a personal
representative." After the case was submitted to the jury, on appellee's
motion, the trial court judicially noticed the order of the probate court
that found no administration existed and none was necessary. A
probate order setting out these recitals:

 shall constitute sufficient legal authority to all persons owing
any money, having custody of any property, or acting as
registrar or transfer agent of any evidence of interest,
indebtedness, property, or right belonging to the estate, for
payment or transfer to the distributees of the decedent, and
such distributees shall be entitled to enforce their right to
such payment or transfer by suit.


Tex. Prob. Code Ann.§ 180 (Vernon 1980).

 Appellant now contends a court may not take judicial notice of
another court's orders, or, at the very minimum, the opposing party is
entitled to an opportunity to challenge the propriety of taking judicial
notice and the manner of proof.

 The trial court has authority to take judicial notice of adjudicative
facts "at any stage of the proceeding." Tex. R. Evid. 201(f). It is
mandatory that the court take judicial notice "if requested by a party
and supplied with the necessary information." Tex. R. Evid. 201(d). 
Rule 201(b) allows a court to take judicial notice of a fact that is not
subject to reasonable dispute. See Tex. R. Evid. 201(b). So long as a
party provides proof of another court's records, a court can take judicial
notice of another court's records. See Southern County Mut. Ins. Co.
v. Ochoa, 19 S.W.3d 453, 463 (Tex. App.--Corpus Christi 2000, no pet);
Bhalli v. Methodist Hosp., 896 S.W.2d 207, 210 (Tex. App.--Houston
[1st Dist.] 1995, writ denied).

 Appellee made the proper request and supplied the trial court with
the necessary information by filing certified copies of the motion and the
probate court's order regarding the need for an administration. 
Appellant received service, copies and attended a hearing on the motion
where she had the opportunity to challenge the propriety of taking
judicial notice and the manner of proof, but chose not to do so. See
Tex. R. Evid. 201(e) (upon timely request party entitled to opportunity to
be heard as to propriety of taking judicial notice and tenor of matter
noticed); National County Mut. Fire Ins. Co. v. Hood, 693 S.W.2d 638,
639 (Tex. App.--Houston [14th Dist.] 1985, no writ). We conclude,
therefore, the trial court properly took judicial notice of the probate
court's order.

 Appellant further contends that it was error to re-open evidence
to allow appellee to establish standing after the case had been
submitted to the jury. Texas Rule of Civil Procedure 270 allows, but
does not require, a judge to permit additional evidence. See Tex. R. Civ.
P. 270. "It is within the trial court's discretion and will be disturbed on
appeal only when clear abuse has been shown." See Guerrero v.
Standard Alloys Mfg. Co., 598 S.W.2d 656, 658 (Tex. Civ. App.--Beaumont 1980, writ ref'd n.r.e.) (citations omitted).

 Appellant relies on Guerrero in support of her argument that a
party may not re-open evidence to prove standing. However, we
conclude Guerrero does not provide such support. In Guerrero, the
defendant sought to re-open the evidence after the verdict and before
judgment, in order to introduce evidence that a borrowed servant had
worker's compensation coverage. See id. at 657. The defendant had
failed to plead or offer evidence to prove that fact. See id. The court of
appeals concluded that the trial court did not err in refusing to re-open
the evidence because the question of compensation coverage of the
defendant sued would be "controversial." Id. This is prohibited by rule
270 of the Texas Rule of Civil Procedure that provides "in a jury case no
evidence on a controversial matter shall be received after the verdict of
the jury." Id. (quoting Tex. R. Civ. P. 270).

 The issue in the present case is that of standing, a matter of law
for the court to determine. The evidence submitted was an order of the
probate court. The order is not being challenged by appellant. 
Appellant only challenges the propriety of taking judicial notice, which
we have found appropriate, and the timeliness of the proof. 
Accordingly, the trial court did not abuse its discretion in re-opening
evidence to allow appellee to establish standing after the case was
submitted to the jury. Issue eight is overruled.

 In issue nine, appellant complains that the suit was not brought
in the capacity as assignee, only as "heir," entitling appellee to only
two-thirds of the amount awarded the decedent. Under intestate
succession, Mrs. Sepulveda's spouse, Humberto Sepulveda, Jr., was
heir to one-third interest in her personal estate. See Tex. Prob. Code
Ann. § 38(b) (Vernon 1980). The remaining two-thirds interest passed
to her only child, Humberto Sepulveda, III. See id. Approximately two
years after Mrs. Sepulveda's death, Mr. Sepulveda filed a disclaimer of
interest in his wife's estate and/or an assignment of his interest to
Humberto, III.(5) The document was filed in the county court and the
district court where the action was pending.

 Appellant contends the disclaimer was ineffective as a
renunciation of his interest because it was not filed within nine months
of the death of Mrs. Sepulveda. See Tex. Prob. Code Ann. § 37A(b)
(Vernon Supp. 2001). We agree. "[A] written memorandum of
disclaimer disclaiming a present interest shall be filed not later than nine
months after the death of the decedent. . . ." See id. Mr. Sepulveda
filed the document approximately two years after his wife's death, thus,
it was ineffective as a disclaimer that renounced his interest. However,
failure to comply with the nine-month filing provision renders a
disclaimer ineffective "except as an assignment of such property to
those who would have received same had the person attempting the
disclaimer died prior to the decedent." Tex. Prob. Code Ann. § 37A(a)
(Vernon Supp. 2001). Appellant does not challenge the effectiveness of
the document as an assignment. Therefore, we conclude the document
effectively assigned Mr. Sepulveda's interest to Humberto, III.

 Appellant further complains, however, that because the suit was
brought in the name of the heir and not in the capacity of personal
representative of the estate of Mrs. Sepulveda or as assignee of Mr.
Sepulveda, the child is entitled to recover only two-thirds of the estate
because of the intestate succession laws. However, "[t]he legal effect
of a pleading in Texas is not determined by its style or name, but by its
contentions and purpose." Guerrero, 598 S.W.2d at 657-58 (citations
omitted).

 The petition in this case is styled Senovio Ramirez, Jr., Temporary
Guardian of Property (Estate) of Humberto Sepulveda III as heir of Olga
Ramirez Sepulveda, deceased v. Elizabeth G. Krishnan, M.D. It alleges
Humberto, III, was and is the sole heir. It pleads that Mr. Sepulveda
disclaimed or, in the event the disclaimer was ineffective, assigned his
interest in Mrs. Sepulveda's estate to Humberto, III, his minor son. 
Further, it prays for judgment against the defendant and for other relief
to which plaintiff may be entitled, "in his capacity as Temporary
Guardian of Property (Estate) of Humberto Sepulveda, III, for damages
suffered by OLGA RAMIREZ SEPULVEDA, as set out herein."

 The substance of the pleading effectively pleads the assignment
and seeks recovery for what is owned by the child. Humberto, III, is the
only heir of his mother's estate by virtue of the laws of intestate
succession and his father's valid assignment. Thus, based on the
contentions of the petition and purpose of the suit as set out in the
petition, we conclude the legal effect of the petition is that Ramirez
brought the suit as guardian of the property of Humberto, III, who is
heir of Mrs. Sepulveda and assignee of Mr. Sepulveda. Thus, the style
need not specifically include the word "assignee" or the phrase
"personal representative" as is urged by appellant.

 Appellant also urges a judgment can only be entered in favor of
the parties in the capacity in which they sue. Having concluded the
parties brought the lawsuit in the capacity of guardian of the property
of the heir and assignee, the judgment did conform to the pleadings. 
See Tex. R. Civ. P. 301 (judgment of court shall conform to pleadings,
nature of case proved and verdict, if any).

 Additionally, appellant asserts that the trial court erred in allowing
the pleadings to be amended after trial. Appellant contends that she
was prejudiced because the amended pleadings exposed her to a full
claim instead of the two-thirds claim and her settlement strategy would
have been greatly influenced by knowing that she risked full range
exposure at trial.

 A trial amendment may be filed only with leave of court. See
Wendell v. Central Power & Light Co., 677 S.W.2d 610, 617 (Tex. App.--Corpus Christi 1984, writ ref'd n.r.e.). The request for leave is
addressed to the trial court's sound discretion, its ruling being reversible
only on a showing of abuse. See id. An amendment to the pleadings
shall be permitted after the verdict and before judgment, absent
surprise or prejudice. See Greenhalgh v. Service Lloyds Ins. Co., 787
S.W.2d 938, 939 (Tex. 1990) (citations omitted); Fincher v. B&D Air
Conditioning & Heating Co., 816 S.W.2d 509, 514 (Tex. App.--Houston
[1st Dist.] 1991, writ denied) (after trial, a partner who was served as
representative of partnership but not named individually, was added
individually); see also Tex. R. Civ. P. 63 & 66.

 After verdict and before judgment, appellee sought leave to amend
his pleadings to clarify that Ramirez was bringing suit in his capacity as
guardian of the minor who was heir and assignee. The petition alleged
the assignment. During the trial, the assignment was introduced into
evidence as an exhibit, without objection. We conclude the amendment
simply conformed the pleadings and the evidence presented at trial. 
Further, appellant did not make any showing to the trial court that her
settlement strategy or her trial posture would have changed knowing
that she risked full range exposure at trial. She has not shown evidence
of surprise or prejudice. Accordingly, the trial court properly granted
leave to file the amendment. Appellant's ninth issue is overruled.

 In her tenth issue, appellant complains that the trial court erred in
reading back testimony without a specific request from the jury. Texas
Rule of Civil Procedure 287 provides, in pertinent part: "If the jury
disagree as to the statement of any witness, they may, upon applying
to the court, have read to them from the court reporter's notes that part
of such witness' testimony on the point in dispute. . . ." Tex. R. Civ. P.
287. The judge is given broad discretion in determining what portions
of the testimony are relevant to the jury's request to have testimony re-read. See Texas Employers' Ins. Ass'n v. Dempsey, 508 S.W.2D 858,
860 (Tex. Civ. App.--Houston [1st Dist.] 1974, writ ref'd n.r.e.). The jury
is entitled to hear only the specific part of the testimony relevant to the
point in dispute, and only when the jury notifies the court that it
disagrees upon the statement made by the witness. Hill v. Robinson,
592 S.W.2D 376, 384 (Tex. Civ. App.--Tyler 1979, writ ref'd n.r.e.);
Scott, 423 S.W.2D at 354.

 During deliberation, the jury sent the following note to the court:
"We, the jury are in disagreement to several of the answers that Olga
Sepulveda gave in her 1989 deposition, such as, what she told the
doctor what she was concerned about." Responding to the court's
request for more specificity, the jury sent a second note stating, in
relevant part: "We also disagree on the symptoms that Mrs. [Sepulveda]
informed the Doctor about in the deposition. Please verify in the
testimony with us."

 The court selected the following deposition testimony regarding
symptoms that was read back to the jury:

 Q: All right. Would you talk about this swelling? Was it
in your feet?


 A: It was all over.


 Q: All over?


 A: My hands, my face, my feet, my whole body was
swollen.


 Q: Was it noticeable?


 A: Yes sir.


 Q: Did you ever tell Doctor Krishnan, what do I do about
this swelling.


 A: No.

 

 Appellant contends the court should have required the jury to
specify the symptoms that were in dispute. She further complains that
the court should have limited the selected testimony to the disputed
symptoms reported, and should not have included testimony about
Mrs. Sepulveda's visible condition.

 In this case, the trial court carefully considered its responsibility in
the application of rule 287 to resolve any disagreement the jury had as
to Mrs. Sepulveda's testimony regarding symptoms reported to
appellant. The court selected the portion of the record it considered
responsive to the inquiries of the jury. It provided a relevant portion of
testimony that addressed the jury's disagreement regarding the
symptoms about which Mrs. Sepulveda informed appellant. 
Accordingly, the court did not abuse its discretion in the selection of the
questioned testimony. Issue ten is overruled.

 Finally, by her eleventh issue, appellant contends cumulative error
prejudiced appellant. Where there are numerous errors, the cumulative
effect may be harmful even if the individual errors, taken alone, are not. 
See Weidner v. Sanchez, 14 S.W.3d 353, 377 (Tex. App.--Houston
[14th Dist.] 2000, no pet.). However, having found no error or harmless
error, we conclude there was no cumulative error that prejudiced
appellant. Her eleventh issue is overruled.

 Accordingly, the judgment of the trial court is AFFIRMED. 


 NELDA V. RODRIGUEZ

 Justice


Publish
.

Tex. R. App. P. 47.3.


Opinion delivered and filed this 

22nd day of February, 2001.

 

1. Senior Justice Melchor Chavez assigned to this Court by the Chief Justice of
the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon
1998).
2. Preeclampsia is a condition in which pregnant women have elevated blood
pressure and edema (swelling) or proteinuria (protein in the urine).
3. Appellee contends that appellant waived this issue. Texas Rule of Appellate
Procedure 33.1 provides, in general, as a prerequisite to presenting a complaint for
review on appeal, the record must show a timely request, objection or motion was
made to the trial court and ruled on either expressly or implicitly. See Tex. R. App. P.
33.1(a). Several courts now recognize that "in general" has loosened the once
mandatory rule that an express ruling is required to preserve a complaint for appeal. 
See Hardman v. Dault, 2 S.W.3d 378, 381 (Tex. App.--San Antonio 1999, no pet.);
Frazier v. Yu, 987 S.W.2d 607, 610 (Tex. App.--Fort Worth 1999, pet. denied); Blum
v. Julian, 977 S.W.2d 819, 823 (Tex. App.--Fort Worth 1998, no pet.). Thus, error
may be preserved without an express ruling on an objection, so long as the record
indicates in some way the trial court ruled on the objection either expressly or
implicitly. See Frazier, 987 S.W.2d at 610 (citing Tex. R. App. P. 33.1(a)).


 In the present case, appellant objected to appellee's argument, but did not
obtain an explicit ruling on her objection. Appellee responded that it was a rebuttal
argument. The trial court then informed appellee, "You may proceed." It is apparent
the trial court was aware of appellant's objection and appellee's response to the
objection. By telling appellee to proceed following this exchange, the trial court
implicitly overruled appellant's objection. Thus, the issue was preserved for our
review.
4. Appellant specifically objected "to talking about . . . and giving additional
instructions of the law that is not part of the case."
5. The disclaimer and renunciation of future interest, at issue, provided, in part:


 WHEREAS, Humberto Sepulveda, Jr.[,] wants for himself no part
of any such recovery [from the present suit] to which his wife, Olga
Sepulveda, was entitled, and wants his minor son, Humberto Sepulveda,
III, to recover 100% of such entitlement, after attorneys' fees and case
expenses are deducted.


 THEREFORE, Humberto Sepulveda, Jr.[,] disclaims and renounces
any and all his individual interest and rights to any recovery that may be
forthcoming from any judgment entered in this case (if any he own[s]),
and further disclaims and renounces any and all his individual interest
and right to any portion of the estate of Olga Ramirez Sepulveda, his
deceased wife, if any he have.


 FURTHER, in the unlikely event that this and any prior disclaimer
of such rights are invalid or ineffective, and only in such event, I hereby
assign all my rights (if any) in the estate of Olga Ramirez Sepulveda to
my said son, Humberto Sepulveda, III[,] and I do deliver such
assignment by filing the original of this document with the County Clerk
in the deed records of Hidalgo County, Texas, and by filing a certified
copy of such document in the subject cause with the District Clerk of
said county.